[No. H005066. Sixth Dist. May 31, 1990.]

MAGNOLIA SQUARE HOMEOWNERS ASSOCIATION, Cross-complainant and Appellant, v.
SAFECO INSURANCE COMPANY OF AMERICA, Cross-defendant and Respondent.

**COUNSEL**

Philip E. Decker and Karin Rumstedt for Cross-complainant and Appellant.

Langley & Haigh, Larry D. Langley and J. Penny Oliver for Cross-defendant and Respondent.

**OPINION**

**ELIA, J.**—Magnolia Square Homeowners Association appeals after summary judgment was granted in favor of Safeco Insurance Company of America. We conclude that summary judgment was properly granted because MSHA's claim for losses incurred due to structural defects was barred by the 12-month limitation period set forth in the Safeco all-risk property insurance policy. The judgment is therefore affirmed.

### FACTS AND PROCEDURAL BACKGROUND

Magnolia Square is a 32-unit residential condominium complex located in Mountain View, California. Each unit owner is a member of Magnolia Square Homeowners Association (MSHA).

Safeco Insurance Company provided coverage for MSHA under an all-risk property insurance policy. The coverage commenced on September 1, 1979, and was renewed on an annual basis until September 1, 1986.

In early 1978, Magnolia Square experienced extensive water leakage problems and began negotiating with the developer of the complex regarding repairs. In 1981, MSHA retained Walter Gloskowski, a civil engineer, to examine the building for possible construction defects. Gloskowski's report documented several problems including (1) absence of building paper; (2) improper flashings; (3) electrical problems; (4) improper nailing; (5) absence of caulking and (6) other violations of the building codes. The report also noted, "There are likely other adverse conditions which a more complete and technically exhaustive inspection might reveal."

In April 1982, as a result of Gloskowski's report, MSHA filed suit, in action No. 496759, against the developer and other entities involved in the design and construction of the complex.

In June 1982, MSHA retained the services of C & J Construction Company to complete certain repairs. During the course of these repairs, additional design and construction defects were observed. These defects resulted in further water intrusion and dry rot.

MSHA filed its first amended complaint (which was dated July 29, 1985 and unverified) on September 13, 1985. Included in the complaint were certain information and belief allegations listed under the subheading "STRUCTURAL DEFECTS. " We set those allegations out in the footnote below.[1]

---

[1] The 1985 complaint included these allegations: "10. Plaintiff is informed and believes and thereupon alleges that the Subject Property and subject structures are not of merchantable quality, were not built with reasonably fit materials, were not constructed in a reasonably workmanlike manner, and are in fact defective and unfit, . . . [i]n the following respects: 10.1 STRUCTURAL DEFECTS : On information and belief, the residential structures at the MAGNOLIA SQUARE Project are defective, incomplete, hazardous, unsafe, and inadequate in that, among other things, said structures do not contain structural framing hold-downs, tie-downs or similar devices in sufficient numbers and at proper locations, or at all; structural shear walls are variously missing or inadequate. 10.2 FIRE WALLS : The inter-unit fire walls are defective, illegal, hazardous, unsafe and incomplete in that, among other things, some fire walls are entirely missing, and other purported fire walls contain voids, open gaps, and voids, thus making them ineffective as fire walls. . . . 10.4 ROOFING SYSTEM : The roofing system installed on the residential buildings in [*sic*] defective and incomplete in that, among other things, the roofing system does not contain proper or adequate flashing and counterflashing, is improperly or inadequately designed or installed, and contains defective materials, . . . causing, . . . water leaking into residential units, . . . thus causing wood rot, decay, mold, mildew, and other conditions of deterioration and structural impairment. . . . 10.13 ENCLOSED GARAGE STRUCTURES: The enclosed garage structures within the Project are de-

On May 20-21, 1986, MSHA's experts opened up parts of the building walls and discovered that certain structural elements called for in the project plans were missing or not built in accordance with the plans. In particular, MSHA contends that the complex was "grossly underdesigned and structurally inadequate. Actual construction amplified and worsened this underdesign by poor and improper construction of such few key structural elements as were called for on the Project plans. Both poor plans and poor construction combined again to create significant building envelope waterproofing problems which, at exterior walls, exacerbate the poor design and construction of the building's structural elements, causing very significant damage to the building envelope and exterior wall framing." Subsequent investigation confirmed that these structural deficiencies existed throughout the complex's buildings.

On August 19, 1986, MSHA's counsel notified Safeco that Magnolia Square suffered extensive structural damage and impairment so that each unit was in danger of total collapse. The letter informed Safeco that the "conditions of collapse and direct physical loss were literally built into the units during the course of construction and have been in existence continuously thereafter, . . ."

On February 4, 1987, Safeco brought an action for declaratory relief seeking a determination that it had no duty to indemnify MSHA. On April 24, 1987, MSHA filed a general denial and a cross-complaint for tortious breach of insurance contract.

Safeco moved for summary judgment. The trial court took judicial notice of the MSHA first amended complaint in action No. 496759, which contained allegations of structural defects. The court subsequently granted the motion based upon its determination that MSHA's claim was barred by the 12-month limitation period set forth in the Safeco policy. This provision of the policy provided, "No suit shall be brought on this policy unless the insured has complied with all of the policy provisions and *has commenced the suit within one year after the loss occurs.*" (Italics added.)

MSHA brings this appeal.

---

fective, inadequate, and incomplete in that the garage walls are unstable, interior plywood sheathing is missing, studs and trusses are inadequately spaced and braced, connections are not bolted, vertical members are missing, some trusses have broken chords, exterior plywood joints are not blocked, anchor bolts are not properly imbedded, all causing or contributing to weakening of the structural integrity of the garage buildings. . . ."

STANDARD OF REVIEW

■ "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) First, we must identify the issues framed by the pleadings because the motion must respond to these allegations by establishing a complete defense or establishing that there is no factual basis for relief on any of the theories contemplated by the opponent's pleading. Second, we must decide whether facts to negate the opponent's claim and warrant judgment in the moving party's favor have been established. Finally, we must determine whether the opposition establishes that a triable, material fact exists. (*Id.* at pp. 1064-1065.) In this regard, we note that "[a] court generally cannot resolve questions about a declarant's credibility in a summary judgment proceeding [citations], unless admissions against interest have been made which justify disregard of any dissimulation." (*Id.* at p. 1065, citing *Gray* v. *Reeves* (1977) 76 Cal.App.3d 567, 573-574 [142 Cal.Rptr. 716].)

DISCUSSION

I.  PROPRIETY OF JUDICIAL NOTICE

■ MSHA argues that the trial court could not take judicial notice of its first amended complaint in action No. 496759 because the complaint constituted hearsay. However, as we shall explain below, the complaint was not offered to prove the truth of the matters asserted therein. It is therefore outside the parameters of the hearsay rule.

■ Evidence Code section 452, subdivision (d) permits the court to take judicial notice of court records. However, a court cannot take judicial notice of the truth of hearsay statements simply because the statements are part of a court record. (*Ramsden* v. *Western Union* (1977) 71 Cal.App.3d 873, 879 [138 Cal.Rptr. 426]; *People* v. *Thacker* (1985) 175 Cal.App.3d 594, 598-599 [221 Cal.Rptr. 37].) As stated in *Day* v. *Sharp* (1975) 50 Cal.App.3d 904 [123 Cal.Rptr. 918], " 'A court may take judicial notice of the *existence* of each document in a court file, but can only take judicial notice of the truth of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments.' " (*Id.* at p. 914, quoting Jefferson, Cal. Evidence Benchbook (1st ed. 1972) Judicial Notice, § 47.3, p. 840.)

■ Were the allegations of structural defects in the first amended complaint offered "to prove the truth of the matter stated?" (Evid. Code,

§ 1200.) We conclude that they were not. The complaint was offered to prove that MSHA had *notice* or *knowledge* of structural defects; it was not offered to prove that such defects in fact existed. Because the allegations were not offered to prove their truth, they are not subject to the prohibition against hearsay. (See e.g. *Younger* v. *State Bar* (1974) 12 Cal.3d 274, 286 [113 Cal.Rptr. 829, 522 P.2d 5]; 1 Witkin, Cal. Evidence (3d ed. 1986) § 593, p. 566.)

The fact that some of the allegations were made on information and belief does not alter our conclusion. Information and belief is a "common legal term used to indicate that 'the allegation is not based on firsthand knowledge of the person making the allegation, but that person nevertheless, in good faith, believes the allegation to be true.'" (*City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74, 93, fn. 9 [260 Cal.Rptr. 520, 776 P.2d 222], quoting Black's Law Dict. (5th ed. 1979) p. 701.) Thus, an allegation on information and belief is hearsay. (*Star Motor Imports, Inc.* v. *Superior Court* (1979) 88 Cal.App.3d 201, 204 [151 Cal.Rptr. 721].) If offered to prove its truth, an information and belief allegation in a complaint could pose a double hearsay problem: the complaint would be hearsay and the statement on information and belief would also be hearsay. However, we need not concern ourselves with that dilemma because, as previously noted, the allegations of structural defects here were offered to prove only that MSHA had notice of such defects. And the fact that MSHA's notice was not based upon firsthand knowledge is of no particular significance since it is the fact of the notice, rather than its basis, which is important.

This case is distinguishable from *Day* v. *Sharp, supra,* 50 Cal.App.3d 904, because the statement in *Day* was offered to prove its truth. In *Day,* court records included a statement, which was made on information and belief, concerning an amount of money allegedly received by the defendant. The plaintiff sought to use the records to prove that the defendant had received that particular amount. The court concluded that the statement "was clearly hearsay which should have been disregarded by the trial court." (*Id.* at p. 915, fn. omitted.)

In sum, we conclude that the allegations of the first amended complaint in action No. 496759 did not constitute hearsay because they were not offered to prove the truth of the matter asserted. Thus, the trial court's decision to take judicial notice of those allegations was not error.

## II.   12-MONTH LIMITATION PERIOD

■   The next issue is whether MSHA's cross-complaint against Safeco, filed on April 24, 1987, was barred by the policy provision requiring MSHA

to commence "the suit within one year after the loss occurs."[2] MSHA contends that its claim was not barred because the loss did not occur until May 1986 when its experts cut open the Magnolia Square walls and discovered structural defects. We conclude, however, that the claim was barred because the allegations in MSHA's first amended complaint, dated July 29, 1985, demonstrate that MSHA had notice of structural defects in 1985, more than one year before MSHA filed its cause of action against Safeco. In making this determination, we consider the decisions in *Abari* v. *State Farm Fire & Casualty Co., supra,* 205 Cal.App.3d 530, and *Lawrence* v. *Western Mutual Ins. Co., supra,* 204 Cal.App.3d 565.

In *Lawrence* v. *Western Mutual Ins. Co., supra,* 204 Cal.App.3d 565, the insured argued that the 12-month period, defined in his all-risk homeowner's policy as the "inception of loss," began to run when the "insured knew or should have known that a loss has occurred which is covered by his insurance policy." (*Id.* at pp. 571-572.) A 1983 soils report received by the insured revealed defects in the property dating back to 1968. The insured did not file his claim until 1985, when he discovered that his policy might provide coverage. On appeal, the court concluded the insured's cause of action accrued no later than 1983, when he received the soils report. The claim was therefore barred by the 12-month limitation period in the policy.

In *Abari* v. *State Farm Fire & Casualty Co., supra,* 205 Cal.App.3d 530, the insured noticed small cracks in the walls, driveway, fireplace and counter of his home in 1979. By 1984, the cracks had worsened and new cracks had developed. In 1985, he filed his claim. The insurer demurred and the demurrer was sustained without leave to amend. On appeal, the insured argued that the 1979 cracks were so small that " 'no reasonable person would be put on notice of a subsidence problem.' " (*Id.* at p. 535.) The court noted that although it was conceivable that the cracks were too trivial to alert the insured to the gravity of the problem, the insured's complaint failed to make such an allegation. The court therefore concluded that the state of the insured's pleadings compelled the conclusion that the insured was on notice beginning in 1979. (*Ibid.*) *Abari* cited *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 832 [195 Cal.Rptr. 421], for the proposition that a cause of action accrues "when the plaintiff discovers or *should have discovered* all facts essential to the cause of action." (*Abari* v.

---

[2] One-year limitation provisions such as the one here are enforceable. (*State Farm Fire & Casualty Co.* v. *Superior Court* (1989) 210 Cal.App.3d 604, 608 [258 Cal.Rptr. 413], citing *Abari* v. *State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530 [252 Cal.Rptr. 565] and *Lawrence* v. *Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565 [251 Cal.Rptr. 319].)

*State Farm Fire & Casualty Co., supra,* 205 Cal.App.3d at p. 535, italics in original.)[3]

MSHA argues that the rule of *April Enterprises, Inc.* v. *KTTV, supra,* 147 Cal.App.3d at page 832, demonstrates that the loss did not occur until MSHA cut into the walls in May 1986 and "discovered" the damage. However, we conclude that even if the *April Enterprises, Inc.* v. *KTTV, supra,* 147 Cal.App.3d at page 832, rule was used to determine when the "loss occurs," MSHA's claim would still be barred because even under that rule, it is evident that by 1985 MSHA could "have discovered injury and cause through the exercise of reasonable diligence." (*Id.* at p. 826.)[4] This conclusion is compelled by the allegations of structural defects in MSHA's first amended complaint.

MSHA's first amended complaint in action No. 496759, dated July 29, 1985, and filed September 13, 1985, listed a number of structural defects. These included, among other things, that (1) structural shear walls were missing or inadequate; (2) the structures did not contain structural framing hold-downs, tie-downs, or similar devices in sufficient numbers and at proper locations; (3) the fire walls were incomplete, missing and defective; (4) the roofing system was improperly or inadequately designed; and (5) the garage walls were unstable, interior plywood sheathing was missing, and vertical members were missing and (6) the structure was not of merchantable quality, built with reasonably fit materials or constructed in a reasonably workmanlike manner.

We think these allegations are sufficient to demonstrate that MSHA had notice, by at least July 29, 1985, that structural problems existed at Magnolia Square. Although MSHA may not have known the full extent of the structural problem, it did realize, by virtue of allegations such as missing or inadequate shear walls, structural framing hold-downs and tie-downs, fire walls, and the "weakening of the structural integrity of the garage buildings" that there were some structural defects. Given this realization, we

---

[3] The 12-month limitation period in the Safeco policy uses the words "loss occurs" as opposed to the term "inception of loss" used in *Lawrence* and *Abari.* In *State Farm Fire & Casualty Co.* v. *Superior Court, supra,* 210 Cal.App.3d at page 610, we determined that the differences between "occurrence" and "inception of loss" were trivial. No less trivial is the difference between "inception of loss" and "loss occurs."

[4] The Supreme Court has granted review in two cases to consider the applicability of a 12-month limitation insurance policy provision to continuous and progressive property damage. (*Prudential-LMI Commercial Insurance* v. *Superior Court* (Cal.App.); *Fire Ins. Exchange* v. *Superior Court* (Cal.App.).

think that MSHA should have conducted further investigation to determine the scope of the structural problem at Magnolia Square. Certainly the fact that some structural components were absent or inadequate should have suggested to MSHA that the complex may not have been constructed according to plan or that the problem may have existed throughout the complex. In addition, we note that the 1982 Gloskowski report advised MSHA that "[t]here are likely other adverse conditions which a more complete and technically exhaustive inspection might reveal."

MSHA's argument that it had no knowledge of the structural defects because they were hidden behind the building walls misses the point. Once MSHA knew that certain building components were missing or inadequate, it should have acted with diligence to determine the extent of the structural deficiencies. To conclude otherwise would permit an insured to submit claims in a piecemeal manner. " '[L]imitation periods on suits are designed to promote justice by preventing surprises through revival of stale claims, to protect defendants and courts from handling matters in which the search for truth may be impaired by loss of evidence, *to encourage plaintiffs to use reasonable and proper diligence in enforcing their rights,* and to prevent fraud.' " (*State Farm Fire & Casualty Co.* v. *Superior Court, supra,* 210 Cal.App.3d at p. 612, quoting *Zieba* v. *Middlesex Mut. Assur. Co.* (D.Conn. 1982) 549 F.Supp. 1318, 1321, italics added.)

We are also unpersuaded by MSHA's argument that the 1985 complaint only concerned damage caused by water leakage and that such damage is severable from damage to the Magnolia Square structure. (Cf. *Winston Square Homeowner's Assn.* v. *Centex West, Inc.* (1989) 213 Cal.App.3d 282, 289 [261 Cal.Rptr. 605].) Although separate areas of damage may exist in a case like this, the 1985 complaint was not limited to damage attributable to water leakage. The complaint contained an express subheading titled "Structural Defects" under which specific structural problems, including the fact that certain components were missing or inadequate, were listed. Such damage is not attributable to water leakage and thus cannot persuade us that MSHA had no knowledge of structural problems prior to May 1986.

In sum, we conclude that the allegations of MSHA's 1985 first amended complaint demonstrate that the loss occurred no later than July 29, 1985, when the complaint was dated. Because MSHA did not file suit against Safeco until April 1987, its claim must be deemed barred by the 12-month limitation period in the Safeco policy.

### III.   Triable Issue of Fact

We next consider MSHA's argument that even if the 1985 MSHA complaint demonstrates that MSHA had notice of structural defects, a

triable issue of fact still exists because MSHA's declarations state that it did not know of the structural damage until May 1986. For reasons we shall explain, we conclude that this argument is without merit.

■ A pleading in a prior civil proceeding may be offered as an evidentiary admission against the pleader. (1 Witkin, Cal. Evidence (3d ed. 1986) § 646, p. 631; *Dolinar* v. *Pedone* (1944) 63 Cal.App.2d 169, 176 [146 P.2d 237].) As the court stated in *Dolinar*, "It may be stated as a general rule that a pleading containing an admission is admissible against the pleader in a proceeding subsequent to the one in which the pleading is filed. [Citations.] This is true even on behalf of a stranger to the former action." (63 Cal.App.2d at p. 176.) The pleading constitutes an evidentiary, rather than judicial admission, and "it is always competent for the party against whom the pleading is offered to *show that the statements were inadvertently made or were not authorized by him or made under mistake of fact.*" (*Id.* at p. 177, italics added.)

■ We do not think MSHA's declarations are materially inconsistent with the conclusion that MSHA had notice of certain structural defects in 1985. The declaration of MSHA's counsel, who signed the first amended complaint in action No. 496759, is an example. The declaration states that counsel did not see anything which would indicate "structural engineering problems." It also states that the MSHA board of directors did not inform counsel of anything indicating that "structural engineering problems" existed or that a "structural engineering investigation" was required. MSHA's counsel states that he did not have "any knowledge or information at that time that indicated to me the existence of the massive serious problems discovered in mid-1986." Finally, the declaration provides that "[a]ny reference to any possible structural engineering problems in the First Amended Complaint was inserted in only in an abundance of preudent [*sic*] caution solely for the purpose of preserving the legal theory of 'relation back' in that action."

That MSHA's counsel did not *personally* know and was not informed by the *MSHA board of directors* that "structural engineering problems" existed does not raise a triable issue of fact regarding whether the complaint demonstrates that MSHA had notice of the particular structural defects listed in the complaint. This is because the declaration leaves open the possibility that an expert informed MSHA's counsel that shear walls, fire walls, framing hold-downs, tie-downs, and other building components were missing or inadequate. That MSHA's counsel did not know of the "massive serious problems discovered in 1986" is also not materially inconsistent

since it is simply another way of stating that MSHA failed to investigate and did not cut open the complex walls until May 1986. In addition, counsel's declaration focuses on the term "structural engineering problems" which does not contradict that MSHA knew of the specific structural defects alleged but only suggests that MSHA may not have known that these problems constituted "structural engineering problems."

The declarations submitted by MSHA experts also do not raise a triable issue of fact regarding whether MSHA had notice of the defects alleged in its complaint. For example, the declaration of Martin Mieger, a general contractor, states that he toured the project in 1985 and 1986 and found it to be "very attractive, neat, well kept and well maintained" and that "[p]rior to mid-1986, I did not observe any signs of structural distress or any other indications which would have lead me to recommend an analysis or investigation of the structural engineering aspects of the units." Although this declaration may show that Mieger did not have notice of the specific structural defects alleged in the 1985 complaint, we do not think it raises a triable issue of fact regarding whether MSHA had such notice.

Other declarations submitted by MSHA tend to show that MSHA did not know the *extent* of the problem until May 1986. For example, the declaration of J. Walter Hoskins, an engineer, stated that "hidden defects at the Magnolia Square Project are not of a type or kind that would have been appreciable to the lay person." As previously stated, even if MSHA and its experts did not know in 1985 what existed behind the complex walls, it did have some knowledge of structural problems such that MSHA should have conducted an investigation to determine why structural shear walls were missing, why certain other building components were missing or inadequate and whether this problem existed throughout the complex. In short, there is nothing in the declarations which suggests that MSHA was "blamelessly ignorant" in failing to investigate prior to May 1986. (See e.g. *April Enterprises, Inc.* v. *KTTV, supra,* 147 Cal.App.3d at p. 827.)

"A court generally cannot resolve questions about a declarant's credibility in a summary judgment proceeding [citations], unless admissions against interest have been made which justify disregard of any dissimulation." (*AARTS Productions, Inc.* v. *Crocker National Bank, supra,* 179 Cal.App.3d at p. 1065, citing *Gray* v. *Reeves* (1977) 76 Cal.App.3d 567, 573-574 [142 Cal.Rptr. 716].) We have carefully considered both the evidentiary admissions in the 1985 complaint and the declarations submitted by MSHA and conclude that no triable issue of fact exists. (Cf. *Price* v. *Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 482 [261 Cal.Rptr. 735] [trial court properly

relied upon admissions in summary judgment proceeding because nothing in the record materially inconsistent with the admissions].)

## IV. WHETHER SAFECO WAIVED OR WAS ESTOPPED TO RELY UPON THE LIMITATION CLAUSE

■ MSHA argues that Safeco waived or was estopped to assert the 12-month limitation period because Safeco acted to lull MSHA into delaying the filing of the lawsuit. For example, MSHA notes that some of Safeco's letters to MSHA's counsel did not mention the 12-month limitation period. Even if we were to conclude that an insurer could somehow be estopped from asserting the 12-month limitation period because it failed to continually advise the insured of the period, we would still reject MSHA's argument because the conduct took place after the 12-month limitation period had run. MSHA's complaint, dated July 29, 1985, is the latest date the loss can be deemed to have occurred. The conduct of which MSHA complains, however, occurred after July 29, 1986, and thus took place after the 12-month period had run. (See e.g. *Lawrence* v. *Western Mutual Ins. Co.,* supra, 204 Cal.App.3d at p. 574; *Becker* v. *State Farm & Cas. Co.* (N.D.Cal. 1987) 664 F.Supp. 460.) Accordingly, "[t]here can be no basis for an estoppel on this record." (*State Farm Fire & Casualty Co.* v. *Superior Court,* supra, 210 Cal.App.3d at p. 612.)

## V. MSHA CROSS-COMPLAINT

■ MSHA argues that the trial court should not have granted summary judgment on its claims against Safeco for insurance bad faith, breach of fiduciary duties and breach of statutory duties because those were not claims on the policy and therefore were not barred by the 12-month limitation period. MSHA's cross-complaint reveals that the essence of those claims is an attempt to recover "[d]amages for failure to provide benefits under subject contract of insurance." As such, MSHA's claim is "fundamentally a claim on the policy and is thus time barred." (*Lawrence* v. *Western Mutual Ins. Co.,* supra, 204 Cal.App.3d at p. 575; see also *Abari* v. *State Farm Fire & Casualty Co.,* supra, 205 Cal.App.3d at p. 536.)

## VI. CONCLUSION

We do not address MSHA's other contentions on appeal in light of our conclusion that the claim is barred by the 12-month limitation period in the Safeco policy.

The judgment is affirmed.

Premo, Acting P. J., and Cottle, J., concurred.