992 P.2d 1047 (2000)
99 Wash.App. 271
PANORAMA VILLAGE CONDOMINIUM OWNERS ASSOCIATION BOARD OF DIRECTORS, Respondent,
v.
ALLSTATE INSURANCE COMPANY, a foreign corporation, Appellant.
No. 43481-1-I.
Court of Appeals of Washington, Division 1.
February 7, 2000.
As Amended on Denial of Reconsideration March 17, 2000.
*1048 Jerret E. Sale, Bullivant, Houser, Bailey, Seattle, Douglas G. Houser, Lisa E. Lear, Bullivant, Houser, Bailey, Portland, OR, for Appellant.
*1049 John S. Riper, Stanislaw Ashbaugh LLP, Seattle, Bo Barker, Bellevue, for Respondent.
AGID, A.C.J.
In 1996, after investigative demolition at the Panorama Village Condominium Complex revealed extensive structural decay, Panorama's homeowners association sought coverage from Allstate Insurance Company under a policy provision that provides coverage for property in danger of imminent collapse caused by hidden decay. Allstate refused to defend on the theory that its policy's suit limitation provision requires an insured to bring claims "within one year after a loss occurs," and the Association had known about the decay for nearly a decade. Allstate appeals the trial court's summary judgment dismissal of its suit-limitation defense, as well as several other findings and conclusions the trial court made about the nature of the continuing damage at Panorama Village. Because there are material factual questions about when the Association knew or should have known about the damage and whether it was hidden, we reverse and remand.

FACTS
Panorama Village is a four-building, 54-unit condominium complex built in Redmond in 1979. In late 1995 and early 1996, in response to reports of maintenance problems and "noticeable deterioration" in one of the units, Panorama's homeowners association solicited repair proposals from several contractors who offered widely varying estimates of damage and projected repair costs. In February 1996, a new property manager at Panorama recommended hiring an architect to evaluate the complex and prepare a repair proposal on which each of the contractors could bid. The Association hired architect Norman Sandler to lead a team that included a contractor, a roofing specialist, and a structural engineer on an initial inspection on May 10, 1996. After this inspection, Sandler reported "critical and potentially dangerous problems" resulting from rot and excessive deterioration in five distinct areas. Suspecting "structural failure," the team recommended investigative demolition. The Association agreed, and in late June 1996, the team removed exterior siding and portions of walls. On July 1, 1996, the inspection team reported, severe structural rot at nearly every location opened for inspection and warned of an imminent risk of collapse. The Association claims that "because the structural decay was hidden behind exterior siding and other finishes," this inspection revealed "for the first time" extensive structural decay.
Two days later, the Association sought coverage from Allstate under its policy's "Collapse" provision. That clause insures against the "risk of direct physical loss involving collapse of a covered building or any part of a covered building caused only by ... hidden decay." The Association alleged that the damage to Panorama was both "recently suffered" and "hidden." Allstate initially failed to respond to the Association's coverage request, but after conducting its own investigation, it denied coverage. When the Association brought this action, Allstate responded with several affirmative defenses, one of which contested the Association's definition of collapse and another asserting violation of the policy's one-year suit-limitation provision.
Before trial, both parties moved for partial summary judgment on coverage issues. Allstate advanced a "known risk" theory, arguing that the Association knew or should have known when purchasing insurance from Allstate that it had a loss covered by the policy. The Association's summary judgment motion alleged that Panorama was at risk for direct physical loss involving collapse and that the cause of the imminent collapse was hidden decay. The trial court denied Allstate's motion, granted the Association's motion, and entered a judgment declaring that Panorama "is at risk of direct physical loss involving collapse," that the "predominant cause of the risk of collapse at plaintiff's property is decay," and that the "decay that is the predominant cause of the risk of collapse at plaintiff's property is, as a matter of law, `hidden.'" The court also entered an order dismissing Allstate's one-year suit limitations defense. These summary judgment rulings did not address where or to what extent damage existed at Panorama. After the trial *1050 court denied reconsideration, the parties reached a partial settlement under which Panorama dismissed several of its claims and Allstate dismissed its remaining affirmative defenses, including the known risk defense.
Left for resolution at trial were two issues: the scope of Allstate's repair obligation, which the trial court viewed as requiring a determination of "what is subject to collapse and what is hidden," and the cost of these repairs.[1] At a pretrial conference, the trial court determined that because the scope of repair determination was equitable in nature, it should be tried before the court, not a jury. As for the damages issue, the court reasoned that it was neither necessary nor possible, in light of the continuing nature of the damage, to "[p]ut a dollar amount" on the damages.
Following the "scope of repair" bench trial, the court issued two orders, one on September 9, 1998, and one on November 23, 1998,[2] requiring Allstate to "replace or repair all structural members that are affected by hidden decay to the extent that they are in imminent danger of collapse" and listed specific areas of structural damage. The trial court also granted the Association's request for attorney fees and litigation expenses. Allstate appeals the earlier summary judgment orders, as well as the judgment and the award of attorney fees and costs. It contends that the Association's claim is barred by its policy's one-year suit-limitation provision, the decay was not "hidden" as required by the policy, it was entitled to a jury trial on the scope of repair, the trial court erred in concluding that Panorama was in immediate danger of collapse and in awarding attorney fees for work on dismissed claims and claims not related to the coverage determination, and the Association was not entitled to recover expert witness fees or other costs not included in RCW 4.84.010.

DISCUSSION
The Policy's Suit-Limitation Provision
The policy contains a suit limitation provision that requires insureds to bring coverage actions within "one year after a loss occurs." Allstate contends that because "there is abundant evidence that [Panorama] suffered substantial decay and structural impairment by the late 1980s, and ... knew about very substantial damage running into the hundreds of thousands of dollars before August 1995," the trial court erred when it dismissed Allstate's suit-limitation defense on summary judgment. The Association responds that a literal reading of the limitation provision reveals that the insured's discovery of the damage is irrelevant. Because the provision requires suit within "one year after a loss occurs," and not within one year of the "inception" or "discovery" of the loss, the Association argues that the provision "permits its insured to pursue coverage rights within one year after a loss is over, not merely within one year after a loss begins." In light of this dispute, before we decide whether Allstate is correct that the Association knew of continuing damage over a year before it brought this claim, we must first decide whether that knowledge is even relevant under Allstate's suit-limitation provision.[3]
The Association argues that requiring suit within "one year after a loss occurs" is logical when the loss is a one-time catastrophe such as a fire or flood. But because the provision is ambiguous as applied to progressive losses, a reasonable insured would interpret the clause as allowing it to wait until the loss is complete, regardless of when it occurred or when the insured first discovered it. This position is untenable because it would allow an insured who is fully aware of significant continuing property damage to wait until the property actually collapses before making a claim. Allstate is correct that public policy, case law, and common sense dictate that an insured should act with reasonable diligence *1051 once an event occurs that puts it on notice of a cognizable coverage claim.
To support its argument that an insured is entitled "to maintain coverage rights throughout the time of a continuing loss," the Association cites three Washington cases, none of which so hold. In Gruol Construction Co. v. Insurance Co. of North America,[4]Villella v. Public Employees Mutual Ins. Co.,[5] and American National Fire Insurance Co. v. B & L Trucking & Construction Co.,[6] the courts recognized that in continuing loss situations, each insurer who provides coverage during the period of loss is obligated to provide full coverage for the damage. These cases do not hold that an insured who knows of continuing damage in each policy period but neglects to inform its insurer can nevertheless seek coverage years later from each insurer when the damage has increased to the point that it is "complete." In Gruol, the insured property sustained an undiscovered, progressively worsening condition of dry rot which started with defective backfilling at the time of construction and continued throughout the time that three insurers provided coverage. The court held all three insurers liable for the damage, but noted that if the trial court found that Gruol knew about the defective backfilling and the possibility of damage, the analysis would be different.[7] That the damage Gruol sustained was unusual and unforeseen was dispositive. In Schwindt v. Commonwealth Insurance Co., [8] this court recently relied on Gruol to hold that the "continuing damage theory can be used to hold insurance companies liable for damage discovered after the expiration of an insurance policy only when the damage is unforeseeable. In these situations, the date of discovery serves as the time of accrual of the statute of limitation."[9] Although the Schwindt court made this statement in the context of a six-year statutory limitation on written contracts, it applies with equal force to contractual suit-limitation provisions.
This conclusion is bolstered by the California Court of Appeals' decision in Magnolia Square Homeowners Ass'n v. Safeco Insurance Co. of America,[10] which reached the same result we do in a nearly identical case involving continuing water damage which led to structural damage and danger of collapse in a condominium complex. The insurance policy at issue in that case, like this one, required the insured to bring suit "within one year after the loss occurs."[11] In a footnote, the court noted that although the "12 month limitation period in the Safeco policy uses the words `loss occurs' as opposed to the term `inception of a loss,'" the difference between the two is "trivial."[12] The court went on to hold that these 12-month limitation periods apply to continuing damage, requiring the insured to bring suit within a year after "`... the plaintiff discovers or should have discovered all facts essential to the cause of action.'"[13] We agree the discovery rule should apply in continuing damage situations when the insured initially lacks the ability to discover that property damage is occurring.[14] Any other approach would either penalize unaware insureds or allow those who are aware of the condition to delay in repairing it until the insured property literally collapses. The law does not condone waste.[15]
*1052 When the Association discovered or could have discovered covered damage under the Allstate policy is therefore relevant to Allstate's defense. The Association sought coverage under the policy's collapse provision, which obligates Allstate to "pay for risk of direct physical loss involving collapse of a covered building or any part of a covered building caused only by ... hidden decay." Because there is a covered loss when the risk occurs, the Association discovered a covered loss when it knew or should have known of a "risk of direct physical loss involving collapse" caused by hidden decay in a specific part of the complex. We cannot determine when this was from the record on appeal.
In Hillhaven Properties Ltd. v. Sellen Construction Co.,[16] the Supreme Court recognized that the question of when a reasonable insured would be on notice of a potentially insured loss for purposes of the known risk doctrine is "a question of fact for the fact finder." Because the known risk doctrine requires the same kind of knowledge evidence at issue here, we adopt Hillhaven`s approach and remand for a specific determination of when, or if, the Association should have discovered that the structural decay was so extensive that a risk of direct physical loss involving collapse was imminent.
Whether the Decay was "Hidden"
We next address the definition of "hidden" as used in the Allstate policy. Although Allstate's policy excludes coverage for property damage from rot, the Association may seek coverage for property in imminent danger of collapse caused by "hidden" decay. In response to the Association's motion for summary judgment on the collapse issue, the trial court ruled that the "physical loss that involves collapse in this case was hidden because it was essentially out of sight, behind the siding, and was obscured from view behind the siding." The trial court reasoned that although there "may have been cues, clues, symptoms, signs, of such nature of decay ... [which] may, indeed, have indicated something about the quality of the damage," these clues were not relevant to the question of whether the loss was hidden.[17] Allstate contends that regardless of whether it is obscured from view, "[d]ecay is not hidden if the insured knew or should have known about it," while the Association maintains that objects or conditions may be hidden even if their presence is known. Because the Allstate policy does not define "hidden," this court must interpret the plain meaning of the term as "it would be understood by the average [person], rather than in a technical sense."[18] To determine plain meaning, we turn to the dictionary.[19]
Webster's Third New International Dictionary 1065 (1966) defines "hidden" as "being out of sight or off the beaten track: concealed," "unexplained, undisclosed, obscure, secret," and "obscured by something that makes recognition difficult." Although the Association's definition is the first listed, it is not reasonable when viewed in context of the Allstate policy.[20] As Allstate points out, the Association's interpretation would permit insureds to allow known decay to continue behind walls until the point of imminent collapse simply because the decay is not visible. Because the only reasonable meaning of hidden as used in the Allstate policy is "undisclosed" *1053 or "unknown," the term is not ambiguous and we have no duty to construe it in the Association's favor.[21] The California Court of Appeals reached the same result in Magnolia Square when it summarily dismissed the insured's argument that it "had no knowledge of the structural defects because they were hidden behind the building walls" as "miss[ing] the point."[22] We disagree with the trial court's interpretation of "hidden" as simply "out of sight" and remand this issue for a determination of which areas of decay were unknown to the Association.
Right to Jury Trial
Allstate next contends that because the trial court had already construed the language of the policy in response to the parties' summary judgment motions, the issues left for trial were "legal, not equitable, in nature" and should have been resolved by a jury. As previously noted, following the summary judgment ruling the parties entered into a stipulation and order of dismissal which provided:
Only the following issues remain for trial on February 23, 1998: damages/declaratory relief regarding scope of repair, plaintiff's claim for attorney's fees and other litigation expenses, plaintiff's claim for relocation expenses, and defendant's corresponding defenses to the claim for attorney's fees and other litigation expenses and relocation expenses.
At a pretrial hearing, the court bifurcated the damages claim and addressed whether the scope of repair under the policy for the property damage was triable to a jury as a matter of law. The court decided that the scope of repair question involved substantial equitable claims and decided to enter a declaratory judgment determining the scope of Allstate's repair obligations which would, in turn, require analysis of "what is subject to collapse and what is hidden." Allstate claims that these are factual issues that should have been decided by a jury. The Association responds that the trial court "properly exercised its equity jurisdiction to render declaratory judgment crafting the scope of repair...."
In its factual findings after the scope of repair trial, the trial court explained its rationale for deciding that these issues were "not appropriate for jury trial":
The actual necessary repairs is [sic] not now known, and cannot be known, in part because substantial decay exists (or is likely to exist) in known areas of buildings as identified in the scope of repairs but the extent of that damage will remain unknown until the exterior of those portions of the buildings are opened up for observation. In addition, the scope of repair to be funded by Allstate will require the ongoing jurisdiction of this court: As areas of the building are opened, additional details of the necessary repair may need to be declared; disputes over the scope and details of architectural and engineering work ... may need to be resolved; and the selection or reasonable costs of professionals or contractors for the repairs may require judicial resolution if the parties cannot agree. None of these issues is capable of current resolution by a trial to the jury. Moreover, the risk of direct physical loss for which a scope of repair must be framed is ongoing.... This factor compounds the inability of a jury trial to address the scope of repairs that is reasonably necessary and that is to be funded by Allstate at such time as the repairs will actually take place. The trial court's explanation that the scope of repair could not be reasonably estimated at the time of trial is accurate. "In determining whether a case is primarily equitable or legal in nature, the trial court is accorded wide discretion, the exercise of which will not be disturbed except for a clear abuse."[23] Given the ongoing nature of the damage, the trial court was well within its discretion in denying Allstate's request for a jury trial.
Imminent Danger of Collapse
Allstate contends that it was entitled to judgment as a matter of law on the collapse *1054 issue because the Association failed to present any evidence from a "structural engineer or anyone qualified to testify about the structural integrity of the complex" that portions of the complex were in imminent danger of collapse from hidden decay. It argues that because the Association bore the burden of establishing coverage, the trial court erred in entering summary judgment in the Association's favor on this issue.
In the absence of any Washington case law addressing the kind of evidence necessary to support a finding of imminent collapse for purposes of establishing insurance coverage, this court should review the trial court's finding that "the affected structural areas of the Panorama Village buildings are in imminent danger of collapse" for substantial evidence. At trial, Norm Sandler, the architect in charge of the investigative demolition crew,[24] testified extensively about the danger of collapse at Panorama using a blowup model of the building to illustrate where structural rot had occurred. If Allstate believed Sandler's testimony was either unreliable or incomplete, it could have presented evidence of its own to contest Sandler's testimony about the imminence of collapse. It did not do so. The trial court's finding that the Association met its burden of proof on the collapse issue is supported by the uncontested evidence.
Attorney Fees and Litigation Expenses
Finally, Allstate challenges the trial court's attorney fees award. First, it contends that the Association should not have received an award of $170,068.50 for work done in preparation for the scope of repair trial because the trial addressed the value of the Association's claim rather than whether Allstate was obligated to provide coverage.
In Olympic Steamship Co. v. Centennial Insurance Co.,[25] the Supreme Court held that attorney fees should be awarded "in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract...." In Dayton v. Farmers Insurance Group,[26] the court clarified that when coverage is not an issue, and the dispute instead relates to the value of the claim, an award of fees under Olympic is not appropriate. Allstate contends that the scope of repair issue relates not to coverage, but to the value of the Association's claim. But in Leingang v. Pierce County Medical Bureau, Inc.,[27] the most recent decision on this issue, the court agreed with the Olympic and Dayton courts that "an insured is entitled to attorney fees if the insured litigates an issue of coverage, but not if the issue is merely a dispute about the value of a claim." The Leingang court went on to hold that "[c]overage disputes include both cases in which the issue of any coverage is disputed and cases in which `the extent of the benefit provided by an insurance contract' is at issue."[28] This is such a case.
Before trial, the court correctly observed that the trial would address "what is subject to collapse and what is hidden." This necessarily involved coverage determinations and can be accurately characterized as assessing "the extent of benefits provided" under Allstate's policy. The trial court noted that it "did not take up, and there remains in the balance of the case, a claim involving certain expenses of Panorama Village and also what the cost of repairs is once the scope of coverage is finally concluded." As the trial court recognized, attorney fees would not be appropriate at that damages trial, but they are warranted here.
Second, Allstate claims that the court erred by failing to deduct fees the Association incurred on unsuccessful claims. At trial, Allstate alleged that the Association requested $26,241 in attorney fees for denied or dismissed claims. In considering this claim, the trial court deducted $18,517 from the $26,241 amount for time the Association *1055 spent in attempting to establish coverage for relocation expenses and on what the trial court and the parties referred to as "Sandler alternate schematic repair,"  an ultimately unsuccessful theory. As for the remaining $7,724, the court found that "such time was reasonably related to plaintiff's ultimately successful prosecution of coverage in this case." Allstate has failed to establish that the trial court abused its discretion in so ruling.
Finally, Allstate contests the trial court's award of costs. The trial court reasoned that "[u]nder the equitable exception to the American Rule created by Olympic and cases in its wake, the court has equitable authority to award reasonable litigation expenses other than fees for legal timekeepers, even if those expenses are not specifically provided for as taxable costs under RCW 4.84.010." Accordingly, the trial court awarded the Association $52,351.07 "in expenses beyond attorney fees...." We agree with Allstate that this was an abuse of discretion.
This court recently recognized in ACLU v. Blaine School District 503, that the cost provisions in Washington's civil rights statute,[29] model toxic control act,[30] and public records act,[31] establish that "the prevailing party is entitled to more than statutory costs as provided for in RCW 4.84.010...."[32]
This is because these statutory cost provisions "liberalize[ ] the availability of cost recovery in private actions that enforce publicly important rights."[33] In all other cases, Washington courts have made clear that only costs specifically authorized in RCW 4.84.010 may be recovered.[34] The trial court erred in applying the more liberal rule in this insurance coverage dispute.
We reverse the trial court's entry of summary judgment in the Association's favor and remand for a determination of whether the Association instituted this action in a timely fashion and whether the damage it complains of was "hidden." Should the Association prevail on either of these issues on remand, the trial court should deduct from its costs award amounts not authorized by RCW 4.84.010 and calculate any attorney fees due the Association.
Reversed and remanded.
COX, J., and GROSSE, J., concur.
NOTES
[1] The stipulation clarifies that "only the following issues remain for trial damages/declaratory relief regarding scope of repair."
[2] A supplemental order under CR 54(b) was necessary because the initial order did not adjudicate all claims, and thus it was neither final nor appealable.
[3] This court reviews legal issues de novo. Brown v. ProWest Transp. Ltd., 76 Wash.App. 412, 886 P.2d 223 (1994).
[4] 11 Wash.App. 632, 524 P.2d 427, review denied, 84 Wash.2d 1014 (1974).
[5] 106 Wash.2d 806, 725 P.2d 957 (1986).
[6] 134 Wash.2d 413, 951 P.2d 250 (1998).
[7] 11 Wash.App. at 635, 524 P.2d 427.
[8] 94 Wash.App. 504, 972 P.2d 570, review granted, 138 Wash.2d 1008, 989 P.2d 1141 (1999) (footnotes omitted).
[9] Id. at 509, 972 P.2d 570.
[10] 221 Cal.App.3d 1049, 271 Cal.Rptr. 1 (1990).
[11] Id. at 1058, 271 Cal.Rptr. 1.
[12] Id. at 1059, 271 Cal.Rptr. 1.
[13] Id. at 1058-59, 271 Cal.Rptr. 1 (quoting Abari v. State Farm Fire & Cos. Co., 205 Cal.App.3d 530, 535, 252 Cal.Rptr. 565 (1988)).
[14] Whether to extend the discovery rule to the circumstances of a particular case is a "judicial policy determination." Gazija v. Nicholas Jems Co., 86 Wash.2d 215, 221, 543 P.2d 338 (1975).
[15] See Dorsey v. Speelman, 1 Wash.App. 85, 459 P.2d 416 (1969).
[16] 133 Wash.2d 751, 766, 948 P.2d 796 (1997).
[17] The trial court did think these facts were relevant to the known loss doctrine, which precludes insurance coverage for damage the insured was aware of when it purchased insurance coverage. It ruled that the Association's knowledge was an issue of fact for a jury to decide, but the parties later stipulated to the dismissal of this defense. The Association contends that "[h]aving dismissed its `known risk' defense, Allstate had no right to resurrect it as part of the term `hidden.'" We disagree. In our view, the known risk doctrine has little or no bearing on the issue of what is "hidden" for the purposes of the collapse provision.
[18] Dairyland Ins. Co. v. Ward, 83 Wash.2d 353, 358, 517 P.2d 966 (1974).
[19] Dictionary definitions are helpful in determining plain meaning. Boeing Co. v. Aetna Cos. & Sur. Co., 113 Wash.2d 869, 882, 784 P.2d 507, 87 A.L.R.4th 405 (1990).
[20] When construing insurance contracts, courts must apply only meanings that are reasonable in the context of the contract. See State Farm Gen. Ins. Co. v. Emerson, 102 Wash.2d 477, 484, 687 P.2d 1139 (1984).
[21] See Hansen v. Friend, 118 Wash.2d 476, 485, 824 P.2d 483 (1992).
[22] 221 Cal.App.3d at 1060, 271 Cal.Rptr. 1.
[23] King Aircraft Sales, Inc. v. Lane, 68 Wash.App. 706, 718, 846 P.2d 550 (1993).
[24] Although Sandler's team included a structural engineer, the engineer did not testify at trial.
[25] 117 Wash.2d 37, 53, 811 P.2d 673 (1991).
[26] 124 Wash.2d 277, 280, 876 P.2d 896 (1994).
[27] 131 Wash.2d 133, 147, 930 P.2d 288 (1997).
[28] Id. (quoting McGreevy v. Oregon Mut. Ins. Co., 128 Wash.2d 26, 33, 904 P.2d 731 (1995)).
[29] RCW 49.60.030(2).
[30] RCW 70.105D.080.
[31] RCW 42.17.340(4).
[32] 95 Wash.App. 106, 116, 975 P.2d 536 (1999).
[33] ACLU, 95 Wash.App. at 117, 975 P.2d 536.
[34] See McGreevy v. Oregon Mut. Ins. Co., 90 Wash.App. 283, 951 P.2d 798 (1998).