Filed 11/26/13  Dillenberg v. U.S. Bank CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| BRETT P. DILLENBERG, as Trustee, etc., et al., | B246432 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC406467) |
| v. | |
| U.S. BANK, N.A., as Trustee, etc., et al., | |
| Defendants and Respondents. | |


APPEAL from judgments of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Dismissed.

Arias Ozzello & Gignac, Mark A. Ozzello and Mark F. Didak for Plaintiffs and Appellants.

Albertson Law and Gina L. Albertson for Defendants and Respondents U.S. Bank National Association et al.

McCarthy & Holthus, Melissa Robbins Coutts and Matthew B. Learned for Defendant and Respondent Cenlar FSB.

Plaintiffs and appellants Brett P. Dillenberg and Karla M. Burns, as trustees for the Dillenberg Family Trust, individually and on behalf of all others similarly situated (collectively, plaintiffs), appeal judgments of dismissal following the sustaining without leave to amend of demurrers interposed by defendants and respondents U.S. Bank National Association (hereafter, USB), Successor Trustee to Bank of America, N.A. (Successor by Merger to LaSalle Bank, N.A.) as Trustee, on behalf of the holders of the Thornburg Mortgage Securities Trust 2005-3 Mortgage Loan Pass-Through Certificates, Series 2005-3; Wells Fargo Bank, N.A. (Wells); Select Portfolio Servicing, Inc. (Select); Bank of America, N.A. (BofA); and Cenlar, FSB (Cenlar), a nationally chartered savings bank (collectively, defendants).

In this action, plaintiffs contend defendants are imposters who falsely claim the right to collect plaintiffs' mortgage payments. However, during the pendency of this appeal, plaintiffs refinanced and voluntarily repaid the loan which defendants were seeking to enforce, thereby mooting this controversy. Accordingly, the appeal is dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Pleadings.*

In June 2005, plaintiffs obtained a $1.4 million loan, originated by Platinum Capital Group (Platinum) and secured by a deed of trust on the real property located at 1405 Chelsea Road in Palos Verdes Estates. Between June and September of 2005, the loan allegedly was sold three times: (1) from Platinum to Thornburg Mortgage Home Loans, Inc. aka TMST Home Loans, Inc. fka Thornburg Mortgage Home Loans, Inc. (Thornburg); (2) from Thornburg to Structured Asset Securities Corporation (SASC); and (3) from SASC to Thornburg Mortgage Securities Trust 2005-3, a Real Estate Mortgage Investment Conduit (REMIC).

Plaintiffs allege that none of the above transfers was validly completed because the note was not negotiated to the successive transferees. Nonetheless, the REMIC, its trustees USB, BofA, LaSalle Bank (LaSalle), and the REMIC's master servicer, Wells, claimed the right to service the note and deed of trust. REMIC's ownership of the note

2

was a condition precedent to the servicer defendants' authority to act on behalf of REMIC, and the condition precedent "never occurred because there was never a valid transfer of plaintiffs' Mortgage Loan . . . to the REMIC's trustee, LaSalle."

"Therefore, Thornburg has been collecting payments from plaintiffs without any right or authority to do so. Thornburg is not an authorized servicer on plaintiffs' loan, but an imposter who is stealing plaintiffs' monthly payments under the coercive and extortionate threat of foreclosing on plaintiffs' home."

Based upon these facts, the operative pleading, a first amended and supplemental complaint, set forth the following causes of action: (1) fraud (alleging a fraudulent scheme to defraud plaintiffs out of the sums the mortgage servicers demanded from them), in that REMIC lacked legal title to the mortgage loan; (2) to quiet title against defendants' adverse claims that clouded plaintiffs' title; (3) cancellation of the deed of trust as null and void, on the ground the security agreement was transferred without the note; (4) declaratory relief to the effect that no defendant has any right, title or interest in plaintiffs' property; (5) wrongful credit reporting, in that plaintiffs had no obligation to make payments on their loans to these defendants; and (6) injunctive relief, to prohibit defendants from demanding any further sum on plaintiffs' mortgage loan.

The complaint also sought certification of a class of all persons whose mortgages were serviced by or on behalf of the REMIC defendants, "while defendants were neither the legal owners of such persons' notes nor the authorized representative of the notes' legal owners."

2. *Demurrers.*

Defendants demurred on numerous grounds, including: plaintiffs were in default and had failed to tender payment on their mortgage, and the underlying property was legally subject to California's nonjudicial foreclosure process.

Further, although plaintiffs labeled their complaint a class action, there had been no motion for class certification. Also, there was no reasonable possibility a class could be certified because there was no community of interest among the potential class members and individual issues predominated over common questions of law and fact.

3

3. *Trial court's ruling.*

The trial court sustained the demurrers in their entirety without leave to amend. This appeal followed.

## CONTENTIONS

The gravamen of the lawsuit is that defendants are "imposters" who "do not own plaintiffs' mortgage note" but falsely claim "that they have the right to collect plaintiffs' mortgage payments." Plaintiffs' basic argument is that because defendants did not originate plaintiffs' loan, their claimed right to enforce plaintiffs' mortgage is based on being either assignees of the note and deed of trust, or the authorized agents of such assignees, and that defendants, as the parties claiming rights under an assignment, bore the burden of proving they received valid assignments.

However, the threshold issue on appeal is whether plaintiffs' voluntary repayment of the loan moots this controversy.

## DISCUSSION

1. *Plaintiffs' voluntary payoff of their loan moots this controversy.*

    a. *Loan payoff during the pendency of this appeal.*

The appellants' reply brief, filed July 12, 2013, objected to defendants' portrayal of plaintiffs as "deadbeats" who are in default on their mortgage. The reply brief stated: "[Plaintiffs] are not in default. *The mortgage was refinanced (i.e., paid off) on June 27, 2013.*" (Italics added.) The reply brief asserted, however, that the refinancing merely "moots small portions of the [plaintiffs'] declaratory and injunctive relief claims," but did not moot most of the issues in this case.[1]

This disclosure in the reply brief prompted a letter to counsel. On September 26, 2013, this court requested supplemental letter briefing as to the impact of the refinancing, stating: "It would appear the assertion in the reply brief that the mortgage loan has been

---

[1] By refinancing their mortgage with another lender, plaintiffs' monthly payment dropped from $6,133 to $4,200 and their interest rate dropped from 5.25 percent to 3.625 percent.

repaid is a judicial admission that the mortgage loan was valid, and renders the Dillenbergs incapable of truthfully alleging that the defendants were not entitled to enforce the debt.  Accordingly, it appears to this court that the refinancing moots the appeal in its entirety.  [¶]  Appellants have until October 7, 2013, to serve and file a letter brief showing cause why the appeal should not be dismissed as moot.  Respondents have until October 17, 2013, to serve and file their responses thereto.”

The parties filed responsive letter briefs.

                             b.  *The nature of judicial admissions and their effect.*

Although briefs are outside the record, we may take factual assertions in a party's appellate brief as admissions.  (*DeRose v. Carswell* (1987) 196 Cal.App.3d 1011, 1019, fn. 3; *Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 444, fn.4; see, e.g. *Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 746-747 [statements in appellate brief treated as judicial admissions].)

Unlike an admission in the pleadings in a separate case, which may be offered as an *evidentiary* admission against the pleader in the case at bench, a judicial admission is one which is made in the case being litigated.  (*Magnolia Square Homeowners Assn. v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1061; *Fireman's Fund Ins. Co. v. Davis* (1995) 37 Cal.App.4th 1432, 1440; *Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1425, fn. 21.)  Here, the admission that plaintiffs have repaid the loan was made in an appellate brief filed in this very case.

Judicial admissions “ ‘are *conclusive* concessions of the truth of those matters, are effectively removed as issues from the litigation, and may not be contradicted, by the party whose pleadings are used against him or her.’ ”  (*St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.* (2003) 111 Cal.App.4th 1234, 1248.)

We recognize a judicial admission in a pleading “is not set in stone, however, because ‘[t]he trial judge . . . has discretion to relieve a party from the effects of a judicial admission by permitting amendment of a pleading.’ (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 454, p. 587.)”  (*Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 452, fn. 2.)

5

c. *The impact of plaintiffs' voluntary repayment of the debt; plaintiffs' repayment amounted to an acknowledgement of the validity of the debt.*

Plaintiffs argue that even if the fact of their payoff is treated as a judicial admission, they should be permitted to explain their admission and/or request this court to exercise its discretion to relieve them from the consequences of their admission. Plaintiffs assert that in repaying the $1.4 million loan they did not acknowledge the validity of the debt because, in approving the payoff statement, they added the following interlineation: "Payors reserve the right to challenge payee's right to receive payment and amount thereof."

It is established that "[p]ayments voluntarily made, with knowledge of the facts, cannot be recovered. (*Holt v. Thomas*, 105 Cal. 273 [38 P. 891].)" (*Western Etc. Oil Co. v. Title Ins. & Tr. Co.* (1949) 92 Cal.App.2d 257, 266.) Even if "payment had been truly 'under protest,' that would not necessarily make the payment involuntary, as more is required. . . . 'Payments of illegal claims enforced by duress, coercion, or compulsion, when the payor has no other adequate remedy to avoid it, will be deemed to have been made involuntarily and may be recovered, but the payment must have been enforced by coercion and there must have been no other adequate means available to prevent the loss.' [Citation.] Duress for this purpose is shown ' "where, by reason of the peculiar facts a reasonably prudent man finds that in order to preserve his property or protect his business interests it is necessary to make a payment of money which he does not owe and which in equity and good conscience the receiver should not retain, [and thus] he may recover it. [Citation.]' " (*Steinman v. Malamed* (2010) 185 Cal.App.4th 1550, 1558.)

However, plaintiffs have not shown good cause for being relieved from the consequences of their admission. Plaintiffs do not assert their repayment of the $1.4 million loan was the product of inadvertence, mistake or neglect, nor have they shown duress. Plaintiffs merely contend that at the time they repaid the loan they continued to dispute the validity of the debt. They emphasize they repaid the loan "under protest," and in repaying the loan, they "did not mean to admit a debt to defendants, but

6

rather sought to escape having to deal on a regular basis with financial institutions they view as uncooperative and untrustworthy."

These arguments are unpersuasive. Simply stated, during the pendency of the appeal, plaintiffs made an economic decision to refinance their existing $1.4 million mortgage at a lower interest rate. These circumstances do not amount to an involuntary payment extracted by duress, coercion or compulsion. Having voluntarily repaid the $1.4 million debt to defendants, plaintiffs have mooted their claim that "an imposter is trying to enforce their mortgage through collection or foreclosure."

As indicated, the gravamen of plaintiffs' lawsuit is that "[d]efendants in this case do not own plaintiffs' mortgage note and are not the owners' authorized representatives. They have no contractual relationship to plaintiffs whatsoever. Yet they have collected hundreds of thousands of dollars from plaintiffs based on false claims that they have the right to collect plaintiffs' mortgage payments." Plaintiffs' voluntary payoff of the $1.4 million mortgage eliminates any justiciable controversy that defendants were not entitled to enforce said mortgage.[2]

d. *Case law cited by plaintiffs is unavailing*.

Plaintiffs argue that payment by a borrower does not preclude a suit to determine whether a claimant is actually entitled to receive payment on a mortgage. In support, they rely on *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284. In *Cockerell*, subsequent to a nonjudicial foreclosure, the issue was whether an assignee of a note lacking a valid assignment was entitled to the proceeds of the foreclosure sale.

---

[2]    Plaintiffs' theory that defendants are imposters who were not entitled to the $1.4 million repayment raises a number of questions. If, as plaintiffs contend, defendants are mere imposters who were not entitled to enforce the debt, are plaintiffs admitting they still owe $1.4 million to the true lender?

Further, notwithstanding plaintiffs' allegations that defendants are imposters, there is no allegation that there is a true lender out there who is demanding repayment. Moreover, the new lender, in the June 2013 refinancing transaction, evidently recognized the legitimacy of defendants' position – otherwise, the new lender would not have disbursed $1.4 million to pay off the existing mortgage.

*Cockerell* is of no assistance to plaintiffs.  Here, the borrowers' mortgage obligation was not discharged via nonjudicial foreclosure -- rather, the borrowers' mortgage obligation was discharged by their voluntary repayment of the $1.4 million debt.  The voluntary repayment by plaintiffs eliminated their claim that defendants were imposters who were not entitled to enforce said mortgage.

e. *No need for remand to identify a new class representative*.

Plaintiffs contend the trial court on remand should decide whether they may continue to assert these claims on a representative basis, or whether additional class representatives will be required.  However, it does not appear the claims alleged in the first amended and supplemental complaint are susceptible to class certification.  Although plaintiffs contend their claims are typical and their note was invalidly transferred in the same manner as all other class members' notes, it appears that each borrower would have a unique set of circumstances with respect to the manner in which their loan was negotiated and transferred.  Therefore, remand for further proceedings is not warranted.

## DISPOSITION

The appeal is dismissed.  All parties shall bear their respective costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


CROSKEY, J.



ALDRICH, J.


8