[No. B145169. Second Dist., Div. Seven. Aug. 21, 2001.]

KIM DAVID LOCKLEY, Plaintiff and Appellant, v.
LAW OFFICE OF CANTRELL, GREEN, PEKICH, CRUZ & McCORT
et al., Defendants and Respondents.

## COUNSEL

Sherri L. Honer and Sima Fard for Plaintiff and Appellant.

Katten Muchin Zavis, Steve Cochran, Patricia Task Craigie and Ryan J. Larsen for Defendants and Respondents.

## OPINION

**WOODS, J.**—Appellant Kim David Lockley appeals from a judgment of dismissal upon the trial court's order sustaining a demurrer without leave to

amend in favor of respondent Law Office of Cantrell, Green, Pekich, Cruz & McCort et al. (hereinafter Law Office) on Lockley's cause of action for legal malpractice. Lockley alleged Law Office failed to protect Lockley's legal interests in a workers' compensation claim. Law Office demurred to Lockley's first amended complaint on the grounds the cause of action was barred by the applicable statute of limitations. Lockley claims the trial court erred in sustaining the demurrer without leave to amend because the statute of limitations governing attorney malpractice was tolled while Law Office represented him. We agree with Lockley because the allegations in Lockley's complaint create a reasonable inference Law Office continuously represented Lockley in the same specific subject matter without interruption. We therefore reverse.

## FACTUAL AND PROCEDURAL SYNOPSIS

### I. *Factual Background*

Lockley, who is of Korean descent, was employed as a police officer by the City of Seal Beach (hereinafter City). In July, 1987, Lockley sought psychological counseling for work-related stress. A city-appointed psychologist determined Lockley's symptoms were due, in large part, to the hostile racial taunts and harassment Lockley experienced from his coworkers. His symptoms were further aggravated when his sister and brother-in-law were indicted for embezzlement charges in Texas. After the indictment, Lockley's brother-in-law became a fugitive.

In April 1988, City conducted an internal affairs investigation and determined Lockley had committed misconduct by assisting his fugitive brother-in-law. City then terminated Lockley. Lockley appealed his termination to the civil service board. He also filed a workers' compensation claim and an Equal Employment Opportunity Commission complaint alleging racial discrimination. Law Office represented Lockley on his workers' compensation claim. Shortly afterwards, City and Lockley entered into a compromise and release agreement (hereinafter C & R). Under the agreement, Lockley promised to relinquish all his claims against City. In exchange, City agreed to process an application for retirement benefits on the basis of a non-work-related disability with the Public Employees' Retirement System (hereinafter PERS) on Lockley's behalf. City further agreed to notify PERS Lockley was entitled to such retirement benefits. Lockley signed a resignation letter and withdrew his civil service appeal and racial discrimination claims. City, however, notified PERS Lockley was terminated "for misconduct." In addition, City waited four months before notifying PERS of Lockley's entitlement to nonindustrial disability retirement. Because of this delay, Lockley was no longer eligible for such retirement.

Lockley subsequently revived his workers' compensation claim. The workers' compensation judge (hereinafter WCJ) awarded him damages and reinstated him to his position as a police officer. The WCJ also refused to approve the C & R on the grounds it did not satisfy applicable statutory requirements. City petitioned the Workers' Compensation Appeals Board (hereinafter WCAB) for reconsideration. The WCAB denied the petition and refused to approve the C & R. The WCAB further determined City breached the agreement by failing to process Lockley's retirement application within one working day and informing PERS that Lockley was terminated for misconduct.

City then petitioned for a writ of review in the Court of Appeal, Fourth Appellate District. The Court of Appeal confirmed the WCAB's award but annulled the order to reinstate Lockley as a police officer. In a concurring opinion, Justice Sonenshine expressed puzzlement as to why Lockley's attorney did not pursue a breach of contract claim after City breached the C & R agreement.

Thereafter, Law Office filed a petition for rehearing in the Court of Appeal. Law Office requested the appellate court delete or clarify Justice Sonenshine's concurring opinion to indicate Law Office was not involved in the negotiation of the C & R agreement. The court ordered a modification of the concurring opinion by adding a footnote after the word "attorney" stating: "Lockley's attorney on this appeal did *not* represent him at the time."

## II. *Procedural Background*

On February 8, 2000, Lockley filed a complaint against Law Office alleging professional negligence and legal malpractice. The complaint claimed Law Office failed to enforce the C & R agreement. The complaint further alleged Law Office failed to advise Lockley of the statute of limitations on his racial discrimination and wrongful termination claims. Law Office demurred to the complaint, contending the claim was unclear and ambiguous, failed to allege the essential element of duty, and was barred by the applicable statute of limitations. The trial court sustained the demurrer with leave to amend. Lockley amended his complaint and once again, Law Office filed a demurrer for the same reasons stated in the first demurrer. Law Office also petitioned the court to judicially notice the C & R agreement, the Court of Appeal's opinion overturning Lockley's reinstatement, the petition for rehearing and the Court of Appeal order modifying the concurring opinion. The trial court took judicial notice of the documents and then sustained the demurrer without leave to amend. Lockley filed a timely notice of appeal on September 28, 2000.

## DISCUSSION

On appeal, Lockley asserts the trial court erred in sustaining the demurrer without leave to amend for three reasons: 1) Lockley's complaint alleged facts sufficient to state a cause of action for legal malpractice, 2) the trial court erred in taking judicial notice of the truth of statements contained within court records, and 3) the statute of limitations was tolled because Law Office continued to represent Lockley in the same specific subject matter without interruption from 1988 through March 1999.

## I. *Standard of Review*

### 1) *Review of Demurrer on Grounds of Bar of Statute of Limitations*

"On appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, the reviewing court must accept as true not only those facts alleged in the complaint but also facts that may be implied or inferred from those expressly alleged." (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339].) "A demurrer on the ground of the bar of the statute of limitations will not lie where the action may be, but is not necessarily barred." (*Moseley v. Abrams* (1985) 170 Cal.App.3d 355, 359 [216 Cal.Rptr. 40]; *Liptak v. Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762, 775 [167 Cal.Rptr. 440].) It must appear clearly and affirmatively that, upon the face of the complaint, the right of action is necessarily barred. (*Valvo v. University of Southern California* (1977) 67 Cal.App.3d 887, 895 [136 Cal.Rptr. 865]; *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1155 [281 Cal.Rptr. 827].) This will not be the case unless the complaint alleges every fact which the defendant would be required to prove if he were to plead the bar of the applicable statute of limitation as an affirmative defense. (*Farris v. Merritt* (1883) 63 Cal. 118, 119.)

### 2) *Standard of Review for Judicial Notice*

Under section 459 of the Evidence Code, reviewing courts have both a mandatory duty and a discretionary power to take judicial notice. (Evid. Code, § 459.) A reviewing court is required to take judicial notice of any matter the trial court has properly judicially noticed or should have judicially noticed. (Evid. Code, § 459, subd. (a).) However, a reviewing court is not required to take judicial notice of such matters in the same tenor as that used by the trial court. (Evid. Code, § 459, subd. (a).)

"In determining the propriety of taking judicial notice of a matter, or its tenor, the reviewing court has the same power the trial court has under

Evid C § 454. Evid C § 459(b)." (2 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 3d ed. 1997) Judicial Notice, § 47.68, p. 1093.)

II. *Judicial Notice of Truth of Facts in Court Records*

"Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter." (2 Jefferson, Cal. Evidence Benchbook, *supra,* Judicial Notice, § 47.1, at pp. 1064-1065.) The court may in its discretion take judicial notice of any court record in the United States. (Evid. Code, § 451.) This includes any orders, findings of facts and conclusions of law, and judgments within court records. (See, e.g., *Columbia Casualty Co. v. Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457 [282 Cal.Rptr. 389]; *Day v. Sharp* (1975) 50 Cal.App.3d. 904 [123 Cal.Rptr. 918].) However, while courts are free to take judicial notice of the *existence* of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files. (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 130, fn. 7 [39 Cal.Rptr.2d 658].) Courts may not take judicial notice of allegations in affidavits, declarations and probation reports in court records because such matters are reasonably subject to dispute and therefore require formal proof. (See, e.g., *Magnolia Square Homeowners Assn. v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1056-1057 [271 Cal.Rptr. 1].)

The underlying theory of judicial notice is that the matter being judicially noticed is a law or fact that is *not reasonably subject to dispute.* (Evid. Code, § 451, subd. (f); *Post v. Prati* (1979) 90 Cal.App.3d 626, 633 [153 Cal.Rptr. 511].) "By making an order establishing the law of the case, it seems that the facts are no longer in. dispute and can therefore be considered true as set forth in an order, findings of fact, or conclusions of law." (2 Jefferson, Cal. Evidence Benchbook, *supra,* Judicial Notice, § 47.12, at p. 1068.) Such facts would not be the proper subject of judicial notice. (*Ibid.*)

The appropriate setting for resolving facts reasonably subject to dispute is the adversary hearing. It is therefore improper for courts to take judicial notice of any facts that are not the product of an adversary hearing which involved the question of their existence or nonexistence. (2 Jefferson, Cal. Evidence Benchbook, *supra,* Judicial Notice, § 47.13, at p. 1069.) "A litigant should not be bound by the court's inclusion in a court order of an assertion of fact that the litigant has not had the opportunity to contest or dispute." (*Ibid.*)

The impropriety of taking judicial notice of the truth of factual findings not stemming from an adversary hearing is aptly illustrated in *People v. Rubio* (1977) 71 Cal.App.3d 757 [139 Cal.Rptr. 750], disapproved on other grounds in *People v. Freeman* (1978) 22 Cal.3d 434, 438-439 [149 Cal.Rptr. 396, 584 P.2d 533]. In *Rubio*, the defendant was charged with robbery. When the defendant failed to appear at a pretrial hearing, the magistrate issued an order stating the defendant had done so "without sufficient excuse." At trial, the prosecution requested the trial court take judicial notice of the magistrate's minute order as evidence of the defendant's flight and guilt. The trial court took judicial notice of the minute order and the defendant was subsequently convicted. The Court of Appeal reversed the conviction, stating the trial court erred in taking judicial notice of the truth of facts asserted in the minute order. Judicial notice of the truth of the facts asserted in the minute order was improper because the magistrate's finding was made without an adversary hearing.

The court in *People v. Tolbert* elaborated the principle set forth in *Rubio*. In *Tolbert*, the court determined that it was improper for the trial court to have judicially noticed the truth of a magistrate's findings in a preliminary examination. The court reasoned that "[a] magistrate is not the ultimate trier in fact," nor are his findings "binding on the superior court if unsupported by substantial evidence." (*People v. Tolbert* (1986) 176 Cal.App.3d 685, 690 [222 Cal.Rptr. 313].)

Here, the order sustaining the demurrer is premised upon Law Office's assertion it did not represent Lockley in connection with the C & R. Law Office's "proof" for this assertion comes from footnote 1 of the Court of Appeal's modified concurring opinion,[1] and the trial court below took judicial notice of the truth of this "proof." There is nothing, however, in the record before us which demonstrates the finding asserted in footnote 1 was the product of an adversary hearing. Furthermore, there is no evidence Lockley was given the opportunity to contest or dispute this finding. As such, we are unable to conclude that the Court of Appeal's finding in footnote 1 of the modified concurring opinion, was "based on an adversary hearing that involve[d] the question of the existence or nonexistence of that fact." In addition, we fail to find any substantial evidence in the instant record to support the proposition Law Office did not provide Lockley legal representation in connection with the C & R agreement. Lockley correctly points out the absence of Law Office's signature on the C & R agreement does not indisputably prove Law Office did not advise Lockley with regard

---

[1]"Lockley's attorney on this appeal did *not* represent him at the time," was inserted after the word "attorney" in the last sentence of the concurring opinion on page 8.

to the agreement. On the contrary, Lockley's complaint alleges Richard Cantrell, an attorney at Law Office, advised him to execute a C & R agreement with City. Lockley's complaint further alleges Law Office had a duty to advise him on all related claims and statute of limitations in the event City breached the agreement. Consequently, having been neither contested, nor supported by substantial evidence, the Court of Appeal's finding remains reasonably subject to dispute. In sum, the trial court erred in taking judicial notice of the truth of the finding.

It is one thing to recognize the Court of Appeal *made* factual findings with regard to Law Office's legal representation of Lockley in connection with the C & R negotiations. It is another to assert those factual findings are indisputably true. The only facts not reasonably subject to dispute in the Court of Appeal's modified opinion are that the opinion exists and that the court added a factual finding in a footnote to the concurring opinion. Whether Law Office represented Lockley in connection with the C & R negotiations is still reasonably subject to dispute. We therefore conclude that until the finding asserted in footnote 1 of the Court of Appeal's modified concurring opinion is contested in a proper adversary hearing and supported by substantial evidence, it is not the proper subject of judicial notice.

Nevertheless, Law Office cites *Weiner v. Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39 [170 Cal.Rptr. 533] for the proposition courts may take judicial notice of pertinent facts and judgments stated in appellate opinions. In *Weiner*, the plaintiff hired attorneys to represent him in a securities fraud investigation. The plaintiff was subsequently indicted and convicted of securities fraud. The plaintiff sued the attorneys for legal malpractice. In demurring to the plaintiff's second amended complaint, the attorneys requested the trial judge to take judicial notice of facts pertaining to plaintiff's securities fraud conviction in a Ninth Circuit Court of Appeals opinion. The *Weiner* court noted the propriety of taking judicial notice of the truth of facts asserted in documents such as orders, findings of fact,. conclusions of law and judgments. It concluded federal appellate decisions and judgments were either official acts of the judicial department of the United States under Evidence Code section 452, subdivision (b), or court records of the United States under subdivision (d)(2) of the same section. The court reasoned facts stated in appellate opinions generally have an accuracy and reliability as least as great as orders, findings of fact, conclusions of law and judgments.

*Weiner* does not support Law Office's position, as it is factually distinguishable from the instant case. Unlike *Weiner*, the instant case involves

judicial notice of the truth of a matter *which was never the product of an adversary hearing.* Lockley never had a chance to contest the Court of Appeal's determination Law Office did not represent him with respect to the settlement agreement. By contrast, the matter judicially noticed in *Weiner* did issue from an adversary hearing. The plaintiff in *Weiner* had the opportunity to contest the criminal charges brought against him at trial.

In addition, the *Weiner* decision contravenes substantial California authority. In *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1566 [8 Cal.Rptr.2d 552], the court stated that " '[t]he *Weiner* court's view of judicial notice indicates an erroneous concept of judicial notice and is clearly fallacious and indefensible. Judicial notice substitutes for formal proof only because the matters judicially noticed are *not* reasonably *subject to dispute.*' " (Italics in original, quoting 2 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 2d ed. 1982) Judicial Notice, § 47.2, p. 1758.)

■ Moreover, the *Weiner* decision appears to run counter to the well-established principle that courts may not take judicial notice of hearsay allegations. An appellate court's description of facts is merely the hearsay assertions of the justices who delivered the opinion. Hearsay statements within the opinion are inadmissible unless they fall within an exception to the hearsay rule. Under section 1280 of the Evidence Code, appellate opinions do come within the exception to the hearsay rule for official records. (Evid. Code, § 1280.) However, an official record is "[e]vidence of a writing made as a record of an act, condition, or event . . . offered . . . to prove the act, condition or event . . . ." (*Ibid.*) Thus, while an official record of an appellate opinion can be admitted to prove the truth of the facts asserted, the most it may prove is that the appellate opinion was delivered and that the court made orders, factual findings, judgments and conclusions of law. Stated another way, what is being noticed is the *existence* of the act, not that what is asserted in the act is true. (*Cruz v. County of Los Angeles* (1985) 173 Cal.App.3d 1131, 1134 [219 Cal.Rptr. 661].) The truth of any factual matters that might be deduced from official records is not the proper subject of judicial notice. (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057 [31 Cal.Rptr.2d 358, 875 P.2d 73].)

While a few court decisions have followed the reasoning in *Weiner* (see, e.g., *Rowe v. Dorrough* (1984) 150 Cal.App.3d 901 [198 Cal.Rptr. 131]; *In re David C.* (1984) 152 Cal.App.3d 1189 [200 Cal.Rptr. 115]), a substantial line of California precedents has not. In *Gilmore v. Superior Court* (1991) 230 Cal.App.3d 416 [281 Cal.Rptr. 343], the Court of Appeal held it was error for the trial court to take judicial notice of factual statements made in

a prior appellate court opinion involving the same defendant and the same set of facts. *Gilmore* involved a wrongful death action. In the prior opinion, the court reversed the defendant's manslaughter conviction, concluding the undisputed evidence shows a justifiable homicide as a matter of law. The trial court took judicial notice not only of the existence of the court opinion and its disposition, but also of the "statement of the facts surrounding the homicide to establish the truth thereof." The court held that while a court may take judicial notice of a related appellate court decision to the extent of recognizing the opinion exists and of the result reached, it may not rely upon statements of the facts surrounding the case to establish the truth thereof. (*Id.* at p. 418.) The *Gilmore* decision supports the conclusion an appellate court's "recitation of facts should not be considered as true on any theory of judicial notice." (2 Jefferson, Cal. Evidence Benchbook, *supra*, Judical Notice, § 47.11, at p. 1068.)

In addition to *Gilmore*, there are a number of other California decisions which have categorically refused to take judicial notice of the truth asserted in court records. (See, e.g., *Magnolia Square Homeowners Assn. v. Safeco Ins. Co.*, *supra*, 221 Cal.App.3d 1049, 1056-1057 [truth of hearsay statements not proper subject of judicial notice simply because they are part of a court record]; *Garcia v. Sterling* (1985) 176 Cal.App.3d 17, 21-22 [221 Cal.Rptr. 349] [contents of deposition transcript not proper subject of judicial notice]; *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918] [truth of allegations made in pleadings and affidavits may not be judicially noticed]; *Ramsden v. Western Union* (1977) 71 Cal.App.3d 873, 879 [138 Cal.Rptr. 426] [improper to take judicial notice of "facts" set forth in an arrest report contained in a municipal court file]; *People v. Surety Ins. Co.* (1982) 136 Cal.App.3d 556, 564 [186 Cal.Rptr. 385] [judicial notice of truth of comments made at hearing by an attorney and a judge deemed improper]; *People v. Rubio* (1977) 71 Cal.App.3d 757, 765-768 [139 Cal.Rptr. 750] disapproved on other grounds in *People v. Freeman* (1978) 22 Cal.3d 434, 438-439 [149 Cal.Rptr. 396, 584 P.2d 533] [judicial notice taken of truth of minute order improper].)

Finally, in *Sosinsky v. Grant* the court concluded "neither a finding of fact made after a contested adversary hearing nor a finding of fact made after any other type of hearing can be indisputably deemed to have been a correct finding." (*Sosinky v. Grant, supra,* 6 Cal.App.4th 1548, 1568.) The *Sosinsky* court affirmed the lower court's refusal to take judicial notice of a judge's factual findings in certain court documents from a prior case. The court noted the doctrine of judicial notice is premised on the notion that certain matters are assumed to be indisputably true and thus require no formal proof.

The court reasoned that taking judicial notice of the truth of a judge's factual finding would be "tantamount to taking judicial notice that the judge's factual finding must necessarily have been correct and that the judge is therefore infallible." (*Ibid.*) The court refused to follow this approach. *Sosinsky* further determined "judicial notice of the truth of *any* judicial finding of fact" is inappropriate. (*Id.* at p. 1569.)

■ In view of all the foregoing, we conclude the trial court erred in taking judicial notice of the truth asserted in the Court of Appeal's modified concurring opinion.

III. *The Complaint on Its Face Alleges Facts Sufficient to Toll the Statute of Limitations*

■ On appeal, Lockley contends the statute of limitations governing attorney malpractice claims was tolled while Law Office continued to represent him. This is a correct statement of the law.

Section 340.6, subdivision (a) of the Code of Civil Procedure provides, in part, that "[a]n action against an attorney for a wrongful act or omission . . . arising in the performance of professional services shall be commenced within one year after the plaintiff discovers . . . the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] . . . [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred."

■ The California Supreme Court has stated that the purpose of the "continuous representation" rule is to " 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.' " (*Laird v. Blacker* (1992) 2 Cal.4th 606, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691].) An objective standard is used to determine whether an attorney's representation has been continuous. (*Worthington v. Rusconi* (1994) 29 Cal.App.4th 1488, 1497 [35 Cal.Rptr.2d 169].) "Continuity of representation ultimately depends, not on the client's subjective beliefs, but rather on evidence of an ongoing *mutual* relationship and of activities in furtherance of the relationship." (*Id.* at p. 1498, italics in original.) The general rule is that the attorney's representation does not end "until the agreed tasks or events have occurred, the client consents to

termination or a court grants an application by counsel for withdrawal." (2 Mallen & Smith, Legal Malpractice (3d ed. 1989) Statute of Limitations, § 18.12, p. 120.)

 Law Office denies ever having represented Lockley's legal interests regarding the C & R agreement. Law Office further contends that even if it had represented Lockley in connection with the agreement such representation would be separate and distinct from that which it provided with regard to Lockley's workers' compensation claim. Law Office asserts separate representation does not constitute the "same specific subject matter" or "continuous representation." Therefore, Law Office concludes, the statute of limitations was not tolled and the court properly concluded Lockley's cause of action was barred.

Law Office relies on *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217 [31 Cal.Rptr.2d 525] to support its argument Lockley's C & R agreement and his workers' compensation claim did not involve the same specific subject matter. In *Foxborough*, the plaintiff sued his attorney for negligently representing him in a real estate transaction. The attorney had drafted an agreement converting the plaintiff's apartment complex into condominiums. The transaction caused the plaintiff to lose certain annexation rights. The plaintiff discovered the loss and negligence four years after the transaction. The plaintiff then rehired the negligent attorney to reclaim his annexation rights. The attorney unsuccessfully attempted to recoup the rights by writing a number of letters. The plaintiff then hired different counsel to file suit to recover the annexation rights. Two years later, the plaintiff hired the negligent attorney as an expert witness and consultant in the lawsuit. When the lawsuit was unsuccessful, the plaintiff filed a malpractice suit against the negligent attorney. (*Foxborough v. Van Atta, supra,* 26 Cal.App.4th 217.)

The *Foxborough* court determined the statute of limitations began running when the plaintiff discovered the loss and negligence and was briefly tolled when the plaintiff rehired the negligent attorney. The court further determined the statute began running again when the plaintiff hired a new attorney to recover the annexation rights. The plaintiff argued the negligent attorney continued to represent him in the same specific subject matter, first by writing letters in an attempt to recover the annexation rights, and then by acting as an expert witness and consultant in the ensuing lawsuit. The court rejected the plaintiff's argument. The court held continuous representation "is not triggered by the mere existence of an attorney-client relationship" (*Foxborough v. Van Atta, supra,* 26 Cal.App.4th at p. 228) and that "the limitations period is not tolled when an attorney's subsequent role is only

tangentially related to the legal representation the attorney provided to the plaintiff." (*Id.* at p. 229.) Because the attorney's role as an expert witness and consultant was "only tangentially related to the legal representation" he had provided to the plaintiff years before, the statute was not tolled. (*Ibid.*) In other words, the statute was not tolled because the plaintiff did not rehire the negligent attorney for the purpose of *legal representation* but rather, to serve as an *expert witness* and *consultant*, long after the statute had run. The court concluded the plaintiff's rehiring of the attorney in a completely different capacity did not constitute the "continuous representation" provided for in Code of Civil Procedure section 340.6, subdivision (a).

The factual distinction between *Foxborough* and the instant case indicates respondent's reliance on *Foxborough* is misplaced. The plaintiff in *Foxborough* initially hired the negligent attorney to represent his legal interests in an annexation rights claim. He then rehired him as an expert witness in the same claim. By contrast, Lockley's complaint states he hired Law Office to represent his legal interests in a workers' compensation claim. On its face, Lockley's complaint alleges Law Office *continuously represented his legal interests on the same specific matter of "claim for worker's compensation from 1988 until March 1999."* We may reasonably infer from the amended complaint that Lockley hired Law Office in only one capacity, that of legal representative. Law Office, therefore, may not reasonably claim that Lockley's complaint alleges Lockley hired Law Office to represent him in a capacity that was "only tangentially related to the legal representation" it provided Lockley in the workers' compensation claim.

Moreover, the evidence in the record before us suggests Law Office's representation regarding Lockley's workers' compensation claim and Law Office's alleged representation in connection with the C & R agreement *constituted the same specific subject matter.* Law Office conceded it was representing appellant in a workers' compensation claim at the time the C & R agreement was being negotiated. Law Office further conceded it advised Lockley to sign the agreement. The agreement clearly and adversely affected Lockley's claim to all workers' compensation benefits. Therefore, Law Office's advice to Lockley in connection with the agreement and Law Office's representation with regard to Lockley's workers' compensation claim appear, at least at this stage of the litigation, to have comprised the same specific subject matter.

Finally, the instant case seems analogous to other California decisions which have applied the continuing-representation tolling provision of Code of Civil Procedure section 340.6. In *Worthington v. Rusconi* (1994) 29

Cal.App.4th 1488 [35 Cal.Rptr.2d 169], the plaintiff hired an attorney to probate her mother's estate. The mother's will devised a home to the plaintiff. The plaintiff retained a life interest in the home. The attorney allegedly advised the plaintiff to disclaim her life interest in exchange for an undivided fractional interest. The plaintiff followed the attorney's advice. Two years later, other heirs sought to sell the home. The attorney advised the plaintiff regarding the distribution of the property. Eleven months later, the plaintiff sued the attorney for malpractice, alleging he had misrepresented her with respect to her life interest in the home. The court determined the attorney's representation regarding the distribution of the property constituted the same specific subject matter as his representation regarding the plaintiff's life interest in the home. Both representations centered on the plaintiff's legal rights with respect to the home.

Similarly in *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509 [80 Cal.Rptr.2d 94], the plaintiff hired an attorney to advise and assist her in the sale of her limited partnership interest. In consideration for her interest, the plaintiff received a promissory note. The attorney neither delivered the note to the plaintiff nor kept it in a secure location. Three years later, the note obligors indicated they wished to renegotiate the terms of the note. The attorney advised the plaintiff about negotiating a restructuring of the note. The restructuring agreement, however, was aborted because the attorney was unable to produce the note to the obligors. Several days later, a new note-restructuring agreement was negotiated which did not require the surrender of the note to the obligors. The attorney continued to represent the plaintiff for the next three years by collecting the proceeds from the restructured-note transactions and the amounts due under the new note. The plaintiff eventually sued the attorney for legal malpractice, alleging negligence with respect to the original note. On appeal, the attorney contended the new-restructured agreement extinguished the original note. The attorney argued his representation of the plaintiff in the new-restructured agreement did not involve the same specific subject matter. The court disagreed, concluding that the attorney's representation during the restructuring negotiations "related to the objectives of the original retention, and involved efforts to protect the interests [the plaintiff] had acquired in the original transaction." The attorney's representation in both the original note transaction and the restructuring agreement centered on the same specific subject matter—the plaintiff's legal rights with respect to the sale of her limited partnership interest.

As in both *Crouse* and *Worthington*, Law Office's representation, as alleged in the complaint, centered on one specific subject matter, Law

Office's prosecution of the workers' compensation claim. We may reasonably infer from the amended complaint Law Office's representation, insofar as its advice to Lockley regarding the C & R agreement and the revival of Lockley's workers' compensation claim after the agreement was breached, related to the same objective—to protect Lockley's legal interests in his workers' compensation claim.

We therefore conclude the complaint on its face indicates the statute of limitations tolled in Lockley's cause of action and the trial court erred in sustaining the demurrer on this basis. The allegations in the complaint lead to a reasonable inference that Law Office continuously represented Lockley in the same specific subject matter.

## DISPOSITION

The judgment of dismissal is reversed and on remand the trial court is directed to (1) vacate the order sustaining the demurrer and (2) enter a new and different order overruling the demurrer. Appellant is entitled to costs incurred in connection with the appeal.

Lillie, P. J., and Johnson, J., concurred.