Filed 8/16/24  In re A.C. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.C. et al., Persons Coming Under the Juvenile Court Law. | D083523 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. Nos. NJ15815A,B) |
| Plaintiff and Respondent, | |
| v. | |
| J.W., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Nadia J. Keilani, Judge.  Appeal dismissed.

Law Office of Robert McLaughlin and Robert McLaughlin for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha C. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

# I

# INTRODUCTION

In the juvenile dependency cases of her children, A.C. and J.C., J.W. (Mother) appeals orders summarily denying her Welfare and Institutions Code[1] section 388 petition to modify prior rulings terminating her reunification services and setting a section 366.26 hearing to select permanent plans for her children. Mother contends that the juvenile court abused its discretion by denying her request for an evidentiary hearing on her section 388 petition after finding she had not made prima facie showings that: (1) circumstances had changed since the prior orders; and (2) her requested new orders were in the children's best interest.

Respondent San Diego County Health and Human Services Agency (the Agency) has filed a combination motion to augment the record on appeal, for judicial notice, and to dismiss Mother's appeal for mootness. The Agency requests that we augment the record on appeal with, or take judicial notice of, a subsequent section 388 petition filed by Mother and orders related to that petition. Mother's subsequent petition sought to modify the same prior orders that terminated her reunification services. However, in the new petition Mother alleged different changed circumstances than cited in the previous petition, though Mother's proposed new orders, identical to the former ones, would be in the children's best interest. The juvenile court found that Mother had made the required prima facie showings and held an evidentiary hearing on her subsequent section 388 petition. The court then issued orders denying her petition, finding that she had not carried her burden to prove by a preponderance of the evidence that there were changed

_____

[1]  All statutory references are to the Welfare and Institutions Code unless otherwise specified.

circumstances and that her requested new orders were in the children's best interest.

In its motion to dismiss, the Agency argues that the evidentiary hearing held on Mother's subsequent section 388 petition and the court's orders denying that petition constitute subsequent events or acts that preclude us from granting her effective relief in the instant appeal and therefore her appeal is moot. As we explain below, we agree and dismiss Mother's appeal.

## II

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2022, the Agency filed section 300 dependency petitions for A.C. and J.C. The petitions alleged that for about two hours Mother left her children alone in the home at night without proper adult supervision and that the home was inadequate and unsafe, placing the children at substantial risk of suffering serious physical harm or illness (§ 300, subd. (b)). A.C. stated that Mother left J.C. and him alone "[a]ll the time," and that the scratch on his chest was from Mother hitting him with a brush. A child abuse pediatrician examined A.C. and opined that the multiple scars on his chest, back, and torso were indicative of, and consistent with, physical abuse or trauma inflicted by a high velocity object, such as a cord or belt. Mother denied using any form of physical discipline on the children.

The juvenile court detained the children and later at the contested jurisdiction and disposition hearing found the petitions' allegations were true. The court removed the children from their parents' care, placed them in a resource family home,[2] and ordered reunification services and supervised

---

[2] A "resource family" is an individual or family that meets certain home environment assessment standards and permanency assessment criteria and

3

visitation for both parents.[3]  Mother's case plan included parenting education, a 52-week child abuse education group program, and a psychological evaluation.

On December 14, 2022, the trial court conducted a contested six-month review hearing.  The court considered the Agency's reports, which stated that Mother continued to deny how often she left the children alone.  It also considered a report of a neuropsychological examination of Mother in which the psychologist opined that Mother had "significant deficits in judgment, social cognition, and adaptive daily living skills," which "affect her ability to safely parent her children without support from a higher functioning, safe adult."  The court terminated Father's reunification services and continued Mother's reunification services for an additional six months.

In its 12-month review report, the Agency stated that Mother had participated in her reunification services, including completion of a parenting class and attending 23 sessions of the 52-week child abuse group program.  Nevertheless, the Agency believed that return of the children to Mother's care would not be in their best interest and recommended that the court terminate her reunification services and set a section 366.26 hearing.  Citing her continued denial of the reasons for the children's removal and failure to show any insight into the risks to the children or how she could safely parent them, the Agency believed Mother had not made progress toward having the children returned to her care.

---

is considered eligible for placement of foster children in out-of-home care, as well as for adoption and guardianship.  (§ 16519.5, subds. (c)(1), (4)(A), (d); *In re C.P.* (2023) 91 Cal.App.5th 145, 155.)

[3]  Although the court found Ab.C. (Father) to be the presumed father of A.C. and J.C., Mother stated that he is not the biological father of either child.  Father is not a party to this appeal.

Following the Agency's report, the court held a contested 12-month review hearing on August 11, 2023. There, Mother stated the trial issues were continuation of reasonable support services and return of the children to her. At the hearing, the court considered the Agency's reports, terminated Mother's reunification services, and set a section 366.26 hearing to select permanent plans for the children.

In its section 366.26 report, the Agency recommended that Mother's and Father's parental rights be terminated and that the court select permanent adoption plans for A.C. and J.C. At the initial section 366.26 hearing on December 11, 2023, the Agency requested a 90-day continuance to search for Father. The court granted the continuance and set a date for the contested hearing.

On December 26, 2023, Mother filed the instant section 388 petition to modify the August 11, 2023 orders and requesting new orders placing the children with her or, alternatively, providing her with further reunification services, and vacating the section 366.26 hearing. Regarding changed circumstances, her petition alleged that since the August 11, 2023 orders that: "Mother has successfully completed the 52 week child abuse class. Mother has a safe and stable home for the minors. Additionally, [M]other attends individual therapy twice [a] month as well as a finance class." Regarding whether her requested new orders would be in the children's best interest, her petition alleged that: "Placement of the minors with the [M]other would allow the minors to be parented by and maintain a strong relationship with their biological mother. The children would benefit by the [M]other being able to utilize the skills learned in her various services."

In support of her section 388 petition, Mother attached a copy of a report from her child abuse program therapist, indicating that she had

5

completed 52 sessions, had 8 absences, and had scores of 3 [i.e., "sometimes"] out of 5 [i.e., "always"] for acceptance of responsibility and insight. In his narrative, Mother's therapist stated: "At this time, [Mother] appears to be ready for completion of this group. She seems to be providing for the children's basic needs, she appears to be willing to examine multiple sources of information for improved parenting techniques, and she has been consistently focused on having [the children returned] to her care. [Her] scores above for section 3 [i.e., acceptance of responsibility] and 8 [i.e., insight] are due to her description of the allegations in question not matching what was documented by [the Agency]." Mother also attached her one-page letter in which she stated, among other things, that she loves her children and has a great support system with her girlfriends. She also said that A.C. was known for lying and stealing toys and described certain incidents during which he purportedly had lied and/or stolen toys. She also stated she was participating in individual therapy twice a month. She stated that A.C. told her that he and J.C. wanted to go home with her soon. She stated that she had a safe, clean, and stable home for the children and her. Mother also attached photographs, which apparently were of the interior of her residence.

At a January 18, 2024 hearing, the court first read a two-page letter submitted by Mother at the hearing and then heard arguments of counsel on her section 388 petition.[4] The court summarily denied her petition, finding that she had not made a prima facie showing of either changed circumstances or that her requested new order would be in the children's best interest. The court stated:

> "When I terminated reunification services back in August,
> my decision was not in any way based on the amount of

---

[4] In her two-page letter, Mother restated much of the content of her initial one-page letter.

effort or time or dedication that you had put in. My reason for terminating at that time, which remains valid, is, as [counsel for the Agency and counsel for the children] noted, despite the amount of services that you have received, there seems to be a disconnect from what you were learning and what you were implementing. And I did have concerns and I continue to have concerns about cognition and being able to fully understand what you were being taught and being able to take responsibility for what had happened that resulted in your kids being taken away.

"When these kids came into dependency, the facts of the case were pretty horrific, but when you testified – and again in your letter today, there is a fixation on [A.C.] lying. I didn't count it in the letter, but I would say that you referenced [A.C.] lying at least a dozen times in this letter. And at one point you also reference [J.C.] learning from him and picking up on that.

"This does indicate to me a lack of taking responsibility, even as we are sitting here on the eve of a selection and implementation hearing. Despite the fact that we're almost 22 months into this case, there is still not the awareness, insight that I would expect to see. That was the case back in August. It remains the case today. I do not find the change in circumstances, and I also do not find that it would be in the best interest of the children to grant your requested relief because it would, in essence, continue this process for them and they are owed and they are entitled to have a sense of stability. It would not be in their best interest at this point to grant your requested relief."

The court concluded: "[F]or that reason, I do not find that a prima facie showing has been made . . . ." The court then set a date for the contested section 366.26 selection and implementation hearing for the children. Mother filed a notice of appeal challenging the January 18, 2024 orders summarily denying her section 388 petition.

7

III

DISCUSSION

A

*Section 388 Generally*

Section 388, subdivision (a) provides: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition . . . shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction." The burden of proof is on the moving party to show, by a preponderance of the evidence, that there are changed circumstances or new evidence and that the requested change would be in the child's best interest. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*); *In re G.B.* (2014) 227 Cal.App.4th 1147, 1157 (*G.B.*).)

The petitioner "need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.) However, if the petitioner does not meet that threshold showing, the juvenile court in its discretion may deny a request for a section 388 evidentiary hearing. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.) "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 (*Zachary G.*).) Alternatively stated, a prima facie case is made on a section 388 petition if its

8

allegations show section 388's two elements are supported by probable cause and need not show a probability of prevailing on the petition. (*G.B., supra*, 227 Cal.App.4th at p. 1157; *In re Aljamie D.* (2000) 84 Cal.App.4th 424, 432.) The petition's allegations must be specific regarding the evidence to be presented and must not be conclusory. (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.) In deciding whether a prima facie showing has been made, the court may consider the entire factual and procedural history of the case. (*Jasmon O.*, at p. 415; *In re K.L.* (2016) 248 Cal.App.4th 52, 62 (*K.L.*).)

The decision whether to grant or deny a section 388 petition is within the discretion of the juvenile court. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228; *In re Y. M.* (2012) 207 Cal.App.4th 892, 920.) Likewise, a decision to summarily deny a section 388 petition without an evidentiary hearing is within the juvenile court's discretion. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 460; *Zachary G., supra*, 77 Cal.App.4th at p. 808.) On appeal, a reviewing court will not disturb a discretionary decision by the juvenile court unless it abuses its discretion by making an arbitrary, capricious, or patently absurd determination. (*Stephanie M., supra*, 7 Cal.4th at p. 318.) The appellant has the burden on appeal to affirmatively show that the juvenile court abused its discretion. (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.)

B

*The Agency's Motion to Dismiss This Appeal for Mootness*

On appeal, Mother contends that the juvenile court abused its discretion by summarily denying her section 388 petition without an evidentiary hearing because she made prima facie showings that circumstances had changed since the August 11, 2023 orders and that her requested new orders were in the children's best interest. However, as the Agency demonstrates, Mother filed a new section 388 petition encompassing

9

her allegations from the petition she appeals here. On the new petition, the court granted an evidentiary hearing. After the hearing, the trial court denied Mother's new petition which included claims found in the previous petition that Mother appeals. Consequently, the Agency filed a motion to dismiss Mother's appeal of the January 2024 orders on the ground of mootness. We agree this appeal is moot and dismiss it.

## 1.

### The Agency's Motions[5]

Mother's second section 388 petition, filed on March 5, 2024, again sought to modify the August 11, 2023 orders in A.C.'s and J.C.'s dependency cases terminating her reunification services and setting a section 366.26 hearing for them. Mother also requested new orders placing the children with her or, alternatively, providing her with further reunification services, and vacating the section 366.26 hearing.[6] Regarding changed circumstances,

---

[5]    On May 1, 2024, the Agency filed a combination motion to augment the record on appeal, for judicial notice, and to dismiss Mother's appeal for mootness. The Agency requests that we augment the record on appeal with or take judicial notice of: (1) a section 388 petition filed by Mother on March 5, 2024, including its attachments; (2) a minute order dated March 18, 2024, in J.C.'s dependency case; (3) a minute order dated April 22, 2024, in J.C.'s dependency case; and (4) a minute order dated April 23, 2024, in J.C.'s dependency case. We note that the Agency appears to have inadvertently omitted from its motions requests for augmentation with, or judicial notice of, corresponding minute orders dated March 18, 2024, April 22, 2024, and April 23, 2024, which were presumably issued in A.C.'s dependency case. We address those omissions, and take judicial notice of the corresponding orders in A.C.'s case, in footnote 8, below.

[6]    Although the Agency's motion for judicial notice does not appear to expressly request that we take judicial notice of Mother's March 5, 2024 section 388 petition, we exercise our discretion to treat its motion for

10

her petition alleged that: "Mother has provided [medical] documentation showing she is a safe and stable parent with no known medical concerns which would prevent her from being able to be a safe parent. Mother continues to have a safe and stable home for the minors. Mother continues to attend therapy twice a month. Mother also completed a psychological evaluation, and the results indicate [M]other is able to be a safe and stable parent to the minors." Regarding whether her requested new orders would be in the children's best interest, her petition alleged that: "Placement of the minors with the [M]other would allow the minors to be parented by and maintain a strong relationship with their biological mother. The children would benefit by the [M]other being able to utilize the skills learned in her various services." Her petition attached certain documents, including a neuropsychological evaluation conducted on February 12, 2024.

On March 18, 2024, the juvenile court issued minute orders in A.C.'s and J.C.'s dependency cases in which it found that Mother made a prima facie showing on her March 5, 2024 section 388 petition and granted her request for an evidentiary hearing.

On April 22, 2024, the court issued minute orders in A.C.'s and J.C.'s dependency cases for the evidentiary hearing conducted on Mother's March 5, 2024 section 388 petition. At that evidentiary hearing, the court admitted in evidence, among other materials, the Agency's 2023 reports and addenda dated March 18, 2024 and April 22, 2024, Mother's section 388 petition filed on March 5, 2024, including its attachments, and the stipulated testimony of the psychologist who conducted Mother's neuropsychological evaluation. It also heard the testimony of Mother and two other witnesses. The court heard

augmentation of the record with that petition as a motion for judicial notice of that document. (*People v. Bautista* (1970) 6 Cal.App.3d 344, 348-349.)

11

arguments of counsel and continued the hearing until April 23, 2024 for its ruling.

On April 23, 2024, the court issued minute orders in A.C.'s and J.C.'s dependency cases in which it found that Mother had not shown either that: (1) there had been a change in circumstance since its August 11, 2023 orders; or (2) her requested new order was in A.C.'s or J.C.'s best interest.

In its motion to dismiss, the Agency argues that the evidentiary hearing held on April 22 and 23, 2024, on Mother's section 388 petition filed on March 5, 2024, and the court's orders dated April 23, 2024, denying that petition constitute subsequent events or acts that preclude us from granting her effective relief in the instant appeal and therefore her appeal is moot.

On May 15, 2024, Mother filed her opposition to the Agency's combination motion to augment, for judicial notice, and to dismiss, arguing that we should deny the Agency's motions to augment and for judicial notice because the documents sought to be augmented and/or judicially noticed were not before the juvenile court at the time of its January 18, 2024 orders, which are the subject of the instant appeal. To the extent that we may exercise our discretion to take judicial notice of the documents filed or issued after the January 18, 2024 orders, Mother nevertheless argues that the documents that the Agency moves to augment or judicially notice do not show that her appeal of the January 18, 2024 orders is moot.

On May 16, 2024, we issued an order stating that we would consider the Agency's motions filed on May 1, 2024, concurrently with the instant appeal. We now grant the Agency's motion for judicial notice of the four documents described above.[7] (Evid. Code, §§ 452, subd. (d), 459, subd. (a);

---

[7] Because the four documents were not part of the record considered by the juvenile court at the time of its January 18, 2024 orders, we cannot

12

*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882 (*Lockley*) [court may in its discretion take judicial notice of any court record in the United States, including any orders, findings of facts and conclusions of law, and judgments within court records].) In so doing, we conclude there are exceptional circumstances that warrant taking judicial notice of those documents because, as discussed below, they show the instant appeal is moot. (*Vons Companies, Inc., supra*, 14 Cal.4th at p. 444, fn. 3 [discretionary judicial notice should be taken only if there are exceptional circumstances].)[8]

2.

Mootness Generally

A court may not give opinions on moot questions. (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*)). An appeal becomes moot when events render it

---

augment the record with those documents and therefore deny the Agency's motion to augment. (See, e.g., Cal. Rules of Court, rule 8.155(a); *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 (*Vons Companies, Inc.*); *In re K.M.* (2015) 242 Cal.App.4th 450, 456 ["The augmentation procedure cannot be used to bring up matters occurring during the pendency of the appeal because those matters are outside the superior court record."].)

8      On June 25, 2024, we issued an order requesting that the Agency submit copies of minute orders dated March 18, 2024, April 22, 2024, and April 23, 2024, which presumably were issued in *A.C.'s* dependency case, and requesting letter briefs by the parties on the question of whether we should take judicial notice of those orders. We have received, and reviewed, copies of those minute orders and the parties' letter briefs. We now also take judicial notice of the minute orders issued in A.C.'s dependency case. (Evid. Code, §§ 452, subd. (d), 459, subd. (a); *Lockley, supra*, 91 Cal.App.4th at p. 882.) In so doing, we conclude there are exceptional circumstances that warrant taking judicial notice of those documents because, as discussed below, they also show the instant appeal is moot. (*Vons Companies, Inc., supra*, 14 Cal.4th at p. 444, fn. 3.)

impossible for the reviewing court to grant the appellant effective relief if the appeal is decided in the appellant's favor. (*Ibid.*) For relief to be effective, two requirements must be met: (1) the appellant must complain of ongoing harm; and (2) the harm must be redressable or capable of being rectified by the outcome that the appellant seeks on appeal. (*Ibid.*) Relief is effective when it can have a practical, tangible impact on the parties' conduct or legal status. (*Id.* at pp. 276-277.)

The mootness rule applies in juvenile dependency cases. (*D.P., supra*, 14 Cal.5th at p. 276.) "[T]he speed with which dependency cases are resolved will often render appeals moot." (*Id.* at p. 284.) "Appellate dispositions may lose their practical efficacy because 'when an appellate court reverses a prior order of the [juvenile] court on a record that may be ancient history to a dependent child, the [juvenile] court must implement the final appellate directive in view of the family's current circumstances and any developments in the dependency proceedings that may have occurred during the pendency of the appeal.' [Citation.]" (*Ibid.*, quoting *In re Anna S.* (2010) 180 Cal.App.4th 1489, 1501.) "An appeal may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief." (*In re E.T.* (2013) 217 Cal.App.4th 426, 436 (*E.T.*).) A reviewing court must decide on a case-by-case basis whether subsequent events in a juvenile dependency proceeding make an appeal moot and whether its decision would affect the outcome in a subsequent proceeding. (*D.P.*, at p. 276.) Reviewing courts decide questions of mootness de novo as a question of law. (*Ibid.*; *Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 319.)

"Even when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute. [Citation.]" (*D.P., supra*,

14

14 Cal.5th at p. 282.) Courts generally exercise that discretion when: (1) the appeal involves an issue of broad public interest that is likely to recur; (2) there may be a recurrence of the controversy between the parties; or (3) a material question remains for the court's determination. (*Ibid.*) In the context of dependency cases, courts may exercise their discretion to decide the merits of appeals despite their mootness on consideration of the overarching goals of the juvenile dependency system and the factors discussed in *D.P.* (*Id.* at pp. 282, 286-287 [in context of appeal of jurisdictional findings].) However, no single factor is dispositive of whether a court should exercise that discretion. (*Id.* at pp. 286-287.)

3.

Mootness of Mother's Appeal

In its motion to dismiss, the Agency argues subsequent events have occurred making it impossible for us to grant Mother effective relief from the trial court's January 2024 section 388 summary denial orders. Specifically, the Agency observes that Mother filed a second section 388 petition on March 5, 2024 and the juvenile court found there she made prima facie showings on its allegations and conducted an evidentiary hearing before denying that petition. Therefore, Mother already received the relief she seeks in her instant appeal of the January 18, 2024 orders. The Agency maintains in this procedural posture we cannot provide Mother with effective appellate relief and should therefore dismiss her appeal. We agree.

In her appellant's opening brief, Mother contends that the juvenile court abused its discretion by summarily denying her December 26, 2023 section 388 petition without an evidentiary hearing. She argues that the court erred by finding that she failed to make prima facie showings on both section 388 prongs: (1) that circumstances had changed since the August 11,

15

2023 orders; and (2) that her requested new orders were in the children's best interest. Based on those purported errors, Mother requests that we reverse the January 18, 2024 orders summarily denying her section 388 petition without an evidentiary hearing.

Although Mother's appellate briefing expressly seeks only reversal of the January 18, 2024 orders (based on her December 26, 2023 section 388 petition), it is necessarily implicit within her request that reversal of those orders results in the matters being remanded to the juvenile court to conduct an evidentiary hearing on her December 26, 2023 petition. However, as we conclude below, Mother already received an evidentiary hearing on her section 388 allegation that her requested orders would be in the children's best interest.

First, both her December 2023 and March 2024 section 388 petitions requested the same new orders, i.e., orders placing the children with her or, alternatively, providing her with further reunification services, and vacating the section 366.26 hearing. Second, both section 388 petitions made the same allegations that her requested new orders were in the children's best interest, stating: "Placement of the minors with the [M]other would allow the minors to be parented by and maintain a strong relationship with their biological mother. The children would benefit by the [M]other being able to utilize the skills learned in her various services."

As discussed above, to succeed on her section 388 petitions, Mother was required to prove by a preponderance of the evidence both: (1) there were changed circumstances since the August 11, 2023 orders; and (2) that her requested new orders would be in the children's best interest. (*Stephanie M., supra*, 7 Cal.4th at p. 317.) Therefore, if she failed to carry her burden of proof on the second prong, the juvenile court would be required to deny her

16

petitions. On appeal, Mother contends that the juvenile court erred by summarily denying her December 26, 2023 section 388 petition. In so doing, she implicitly, if not expressly, argues that the court erred when it found she had not made a prima facie showing on the second prong. This resulted in the court mistakenly denying her section 388 petition without an evidentiary hearing on the question of whether her requested new orders were in the children's best interest. Any effective relief that we could provide Mother in this appeal would necessarily involve reversal of the January 18, 2024 orders and remand for further proceedings on her December 26, 2023 section 388 petition. That would require an evidentiary hearing on her petition's allegations, including its allegation that her requested new orders would be in the children's best interest.

However, as the minute orders in the children's dependency cases issued on March 18, 2024, April 22, 2024, and April 23, 2024 show, Mother, already received the relief that she appears to seek in the instant appeal. Specifically, Mother received an evidentiary hearing on her section 388 petition allegation that her requested new orders are in the children's best interest. At the evidentiary hearing held on April 22, 2024, and April 23, 2024, the court considered the evidence presented at that hearing and also presumably considered the entire factual and procedural history of the children's cases. (See, e.g., *K.L., supra*, 248 Cal.App.4th at p. 62 [in deciding § 388 petition, court may consider entire factual and procedural history of case].) As a result, the court found that Mother had not carried her burden to prove her requested new orders were in the children's best interest.

This means subsequent events have occurred that make it impossible for us to award Mother effective relief. Therefore, we conclude her appeal is moot. (*E.T., supra*, 217 Cal.App.4th at p. 436; cf. *Cerletti v. Newsom* (2021)

17

71 Cal.App.5th 760, 766 [appeal of order denying injunction was moot because act sought to be enjoined was subsequently performed]; *Disenhouse v. Peevey* (2014) 226 Cal.App.4th 1096, 1103 [same].) Assuming arguendo that Mother adequately complained of ongoing harm from the January 18, 2024 orders, that purported harm is not redressable or capable of being rectified by the outcome she seeks in this appeal. (*D.P., supra*, 14 Cal.5th at p. 276.) Furthermore, there is no relief that we can grant Mother that can have a practical, tangible impact on the parties' conduct or legal status. (*Id.* at pp. 276-277.) Specifically, Mother already received an evidentiary hearing on the allegations that her requested orders in either or both petitions would be in the children's best interests.[9] Accordingly, we dismiss her appeal without addressing its merits.

In her opposition to the Agency's motion to dismiss, Mother requests that, in the event we conclude her appeal is moot, we nevertheless exercise our discretion to address and decide the merits of her appeal. However, she does not show, nor do we conclude, that: (1) the appeal involves an issue of broad public interest that is likely to recur; (2) there may be a recurrence of the controversy between the parties; or (3) a material question remains for the court's determination. (*D.P., supra*, 14 Cal.5th at p. 282.) Furthermore, after considering the overarching goals of the juvenile dependency system

---

[9] In so concluding, we do not, and need not, address the question of whether the juvenile court erred by finding that Mother's December 26, 2023 section 388 petition did not make a prima facie showing on the first prong of changed circumstances. As discussed above, Mother was required to make prima facie showings on both prongs and the fact that she subsequently received an evidentiary hearing on the second prong precludes us from awarding her relief, regardless of whether the trial court denied her an evidentiary hearing on the specific changed circumstances alleged in her December 26, 2023 section 388 petition.

and the factors discussed in *D.P.*, we decline to exercise our discretion to consider the instant appeal despite its mootness.  (*Id.* at pp. 282, 286-287.)

IV

DISPOSITION

The appeal is dismissed.


RUBIN, J.

WE CONCUR:

IRION, Acting P. J.

DATO, J.