Filed 2/17/26  Thee Aguila v. Baschung CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THEE AGUILA, INC., | B343822 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. Nos. 19NWCV00417 and 21NWCV00836) |
| WOLF BASCHUNG, | |
| Defendant and Respondent. | |
| THEE AGUILA, INC., | |
| Plaintiff and Appellant, | |
| v. | |
| DTLA REAL ESTATE, INC., | |
| Defendant and Respondent. | |

APPEAL from judgment of the Superior Court of the County of Los Angeles, Lee W. Tsao, Judge. Affirmed.

The Tym Firm and Ronald D. Tym for Plaintiff and Appellant.

Zelms Erlich & Lenkov, Rinat Klier Erlich, Brian T. Smith, and Elizabeth A. Macayan for Defendants and Respondents.

_____

This appeal involves two of many cases filed by Thee Aguila, Inc. (TAI) or Henry Aguila concerning certain property located in Pico Rivera (the Property). In this instance, TAI appeals from the judgment entered in favor of DTLA Real Estate, Inc. dba Keller Williams Realty (DTLA) and its agent, Wolf Baschung (Baschung) (the brokers), after they successfully moved for summary judgment. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A. **Factual Background**

1. *The Property*

TAI leased property in Pico Rivera to tenants who operated it as a nightclub. In 2015, the tenants faced criminal charges for money laundering. The nightclub shut down, and the tenants stopped paying rent.

Later that year, due to debt and the loss of rental income, TAI borrowed $5.7 million from Pico Rivera First Mortgage Investors (First Mortgage). Carl Lindros was a partner in First Mortgage.

## 2. *Listing Agreement Between TAI and the Brokers*

Its financial difficulties mounting, TAI engaged the brokers to sell the Property in 2017. A listing agreement granted the brokers[1] the exclusive right to sell the Property between May 25, 2017, and May 24, 2018. The agreement identified TAI as the "'Owner'" of the Property. TAI's president, Aguila, signed the agreement on its behalf. The brokers agreed, among other things, to "exercise reasonable effort and due diligence to achieve the purposes of this Listing Agreement." TAI "agree[d] to immediately disclose in writing any condition known to [it] that affects the Property . . . ." TAI represented that it was unaware of pending or threatened actions that affected the Property or TAI's ability to transfer it, but if any came to its attention, it would "promptly notify Broker in writing . . . ."

The marketing efforts of Baschung and another agent yielded purchase offers between $5.25 and $6 million. TAI rejected these offers.

TAI defaulted on the loan, and in August 2017, First Mortgage commenced nonjudicial foreclosure proceedings.

## 3. *The Alleged Oral Option Contract Between TAI and First Mortgage*

Before the trustee's sale, TAI and First Mortgage, represented by Aguila and Lindros, respectively, allegedly entered into an oral "Option Contract" that gave TAI "the option

---

[1] Though the listing agreement identified a different entity as the "Broker," Baschung and DTLA indicated they were bound by it. They stated, as an undisputed material fact supporting summary judgment, that TAI "engaged" them to sell the Property, and they referred to the listing agreement.

3

to sell or acquire the Property from" First Mortgage.  TAI would pay certain fees, insure and maintain the Property, and pay $100,000 to First Mortgage.  In exchange, First Mortgage "would hold and maintain clear title to the Property" for 12 months after the trustee's sale so that TAI could "secure a bonafide buyer, or sufficient funds to satisfy monies owed" under the loan.  At such time, TAI would be "allowed to exercise its option to sell or acquire the Property" by paying an agreed upon payoff sum, and First Mortgage would transfer title to a new owner as directed by TAI.

   4.   *Trustee's Sale and Subsequent Efforts to Sell the Property*

On December 7, 2017, a trustee's sale was conducted, and First Mortgage took title to the Property.

Baschung informed Lindros of a prospective purchaser, Blackwood, LLC (Blackwood).  Lindros asked Baschung to submit Blackwood's offers to Aguila.  In late December 2017, the brokers forwarded two letters of intent to Aguila, but he did not respond.

Lindros negotiated with Blackwood directly, and in January 2018, First Mortgage and Blackwood executed a purchase agreement.  Blackwood, however, cancelled escrow after learning of an easement encumbering the Property.

In mid-2019, First Mortgage and the brokers entered into a listing agreement.  The Property was sold later that year.

**B.     Procedural Background**

       1.     *Thee Aguila, Inc. v. Blackwood, LLC*

In May 2019, TAI filed the first[2] of the two actions underlying this appeal.  TAI alleged its title to the Property was "extinguished through foreclosure proceedings," but the Option Contract gave it the right to sell or reacquire the Property.  The brokers allegedly schemed with First Mortgage and Lindros to circumvent the Option Contract and sell Property without TAI's knowledge.  TAI asserted claims for breach of fiduciary duty, unfair business practices, and intentional interference with prospective economic advantage (IIPEA) and contractual relations (IICR).

In December 2019, the defendants filed a notice of related cases that identified another action[3] concerning the Property pending in the Santa Barbara Superior Court.[4]  That action was filed by First Mortgage to enforce a personal guaranty given by Aguila and included cross-claims filed by Aguila alleging a conspiracy among Baschung, First Mortgage, and Lindros to interfere with the Option Contract.  The *Blackwood* case was abated until the Santa Barbara case concluded.

---

[2]     *Thee Aguila, Inc. v. Blackwood* (Super. Ct. Los Angeles County Case no. 19NWCV00417) (*Blackwood* case).

[3]     In addition to the two actions underlying this appeal, TAI and Aguila have filed at least five other actions or cross-actions against First Mortgage, other brokers, the title company, and the Property's purchaser and its related companies, representatives, and attorneys.

[4]     *Pico Rivera First Mortgage Investors, LP v. Henry Aguila* (Super. Ct. Santa Barbara County Case no. 18CV04958) (Santa Barbara case).

### 2. *Thee Aguila, Inc. v. Forward Beverly Hills, Inc.*

In December 2021, TAI filed an action[5] against DTLA asserting breach of the listing agreement and the implied covenant of good faith and fair dealing. Departing significantly from its allegation in its *Blackwood* pleading, TAI alleged that the trustee's sale was void, and consequently, the listing agreement remained effective thereafter. TAI alleged that DTLA breached the listing agreement by ceasing efforts to sell the Property on TAI's behalf and agreeing to sell the Property on First Mortgage's behalf while excluding TAI from the sale.

In late 2022, the trial court ended the abatement of the *Blackwood* case and consolidated the *Blackwood* and *Forward* cases.

### 3. *Summary Judgment*

The brokers moved for summary judgment, or in the alternative, summary adjudication. Their primary arguments were that res judicata and the judgment in the Santa Barbara case barred TAI's claims, and that TAI could not prove facts essential to the theories of liability on which its claims were based.

The trial court received supplemental briefing from the parties after the Santa Barbara judgment was affirmed on appeal.

The trial court granted the brokers' summary judgment motion and entered judgment in their favor. TAI appealed.

---

[5]     *Thee Aguila, Inc. v. Forward Beverly Hills, Inc.* (Super. Ct. Los Angeles County Case no. 21NWCV00836) (*Forward* case).

6

## DISCUSSION

### A.    Governing Law—Summary Judgment

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense.  (*Id.*, subd. (p)(2).)  If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact.  (*Ibid.*)  A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent.  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)  We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons.  (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636–637.)

### B.    Analysis

The trial court found the brokers were entitled to summary adjudication of the claims for breach of fiduciary duty, unfair business practices, IIPEA, and IICR because TAI could not prove a fact vital to these claims:  the brokers' knowledge of the Option Contract.  The court also found the brokers were entitled to

7

summary adjudication of the claims for breach of the listing agreement and the implied covenant of good faith and fair dealing because the listing agreement was no longer valid after the trustee's sale. We conclude TAI did not raise a triable issue of material fact as to any claim.

    1.    *Brokers' Knowledge of the Option Contract*
        a.    TAI's Failure to Raise a Triable Issue Required Grant of Summary Adjudication of the Tort and Unlawful Business Practices Claims

TAI's tort and unfair business practices claims against the brokers were premised on a single theory of liability: the brokers, with "direct and undeniable knowledge of the Option Contract," perpetrated a "scheme" with Lindros and First Mortgage to "interfere and circumvent [TAI's] Option Contract and its rights there under." These allegations were incorporated by reference into each claim, and variations also were specifically alleged in support of each claim.[6] Accordingly, we turn to whether the brokers carried their burden on summary judgment to show TAI could not prove this key fact.

The brokers submitted a declaration from Baschung and excerpts from his and Aguila's depositions. Baschung declared

---

[6] TAI alleged the brokers' knowing circumvention of the Option Contract amounted to a breach of their fiduciary duties. The same conduct formed the "scheme" that was alleged to be an unfair business practice. In the IIPEA and IICR claims, TAI alleged that the brokers acted to disrupt the economic relationship memorialized in the Option Contract. TAI alleged that, with knowledge of the Option Contract— and therefore knowledge that the listing agreement remained effective despite completion of the trustee's sale—the brokers agreed to sell the property on First Mortgage's behalf without TAI's involvement.

8

that no one told him the Option Contract's terms. He believed First Mortgage had acquired title to the Property at the trustee's sale, and the listing agreement was no longer effective. Lindros said he wanted Aguila "to be involved" in the Blackwood transaction but did not explain how. Lindros did not mention Aguila's having responsibility for the Property's maintenance.

Aguila testified that only he and Lindros were on the phone call during which the Option Contract was formed, and the terms were not memorialized in writing. Aguila "never told [Baschung] the terms" of the Option Contract, and did not believe Lindros did so. According to Aguila, the only persons who needed to know the terms were "me and Mr. Lindros."

The brokers made a prima facie showing they did not know about the Option Contract. Thus, the burden shifted to TAI to prove the existence of a triable issue on this fact.

TAI submitted a declaration from Aguila. He declared that, on December 7, 2017, Baschung called him and "appeared to already know about the Option Contract" because "he told me that he understood from [Lindros] that all offers and [letters of intent] were to go solely to me." Later that month, Baschung and his co-agent forwarded Blackwood's most recent letters of intent to Aguila. This conduct, TAI argues, demonstrated Baschung's knowledge of the Option Contract. We disagree.

For the evidence to create a triable issue, it must be sufficient to allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar, supra,* 25 Cal.4th at 850.) If an opposing plaintiff's evidence and all inferences drawn from it show the existence of a required element of a claim is "'*only as likely*'" or "'*even less likely*'" as its nonexistence, the court must grant a defendant's motion for

9

summary judgment "'because a reasonable trier of fact could not find for the plaintiff.' [Citation.]" (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1474.)

When a plaintiff opposing summary judgment asks the court to draw inferences about the defendant's state of mind from circumstances surrounding a transaction, such inferences ""'must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork." [Citation.]' [Citation]." (*Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1298–1299.) "'Further, an issue of fact is not raised by "cryptic, broadly phrased, and conclusory assertions" [citation], or mere possibilities [citation]. "Thus, while the court in determining a motion for summary judgment does not 'try' the case, the court is bound to consider the competency of the evidence presented." [Citation.]'" (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525–526.)

The evidence presented by TAI allows only speculation as to the brokers' knowledge of the Option Contract. Aguila admittedly did not inform Baschung of the Option Contract's terms, although they spoke before and at the trustee's sale. Aguila did not mention the Option Contract even though the listing agreement obligated TAI to notify the brokers promptly in writing if it learned of actions or conditions affecting the Property. Aguila did not think Lindros informed Baschung of the Option Contract, and Baschung stated he did not know about it. At most, Lindros told Baschung that Aguila would be involved in the sale, and many possible reasons can be imagined for why this might be the case given Aguila's history with the Property. Aguila did not respond when the brokers conveyed information

10

concerning Blackwood's offers to him, and Blackwood negotiated with Lindros alone.

TAI did not provide evidence sufficient to create a triable issue of fact as to the brokers' knowledge of the Option Contract, which is central to its tort and unfair business practices claims.

> b. The Brokers' Knowledge Was Material to the Claim for Breach of Fiduciary Duty

TAI argues that summary adjudication of the breach of fiduciary duty claim was improper because the brokers' knowledge is pertinent to scienter, which is not an essential element of the cause of action. Therefore, TAI reasons, it was unnecessary to include an allegation of the brokers' knowledge of the Option Contract, and the allegation should be treated as surplusage and ignored.

For purposes of summary judgment, "'[w]hat matters are in issue (and consequently material) is determined mainly by the pleadings, the rules of pleading, and the substantive law relating to the particular kind of case.' [Citation.]" (*Andalon v. Superior Court* (1984) 162 Cal.App.3d 600, 604, fn. 3 (*Andalon*).)

TAI correctly states that a defendant's *intent* to breach a fiduciary duty is not an element of the cause of action. (See, e.g., *Tribeca Companies, LLC v. First American Title Ins.* Co. (2015) 239 Cal.App.4th 1088, 1114 [elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach].) The *breach* of an alleged fiduciary duty, however, is an essential element of the claim, and we turn to the pleadings to determine how TAI defined the alleged breach. (*Andalon, supra,* 162 Cal.App.3d at p. 604, fn. 3.)

11

The operative pleading described the breach as the brokers' acting contrary to TAI's interests by "knowingly [seeking] to circumvent [TAI's] option contract, by entering into an agreement with [First Mortgage] and Lindros to sell the Property without TAI's knowledge or consent . . . ." By these allegations, TAI made the brokers' knowledge of the Option Contract material to the breach of fiduciary duty claim, and consequently, it was required to prove the existence of a triable issue on this fact. (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 [the pleadings play a "key role" in summary judgment, functioning to delimit the scope of the issues and frame the outer measures of materiality].) It did not do so.

Like the claim for breach of fiduciary duty, TAI's claims for unfair business practices, IIPEA, and IICR, relied on the brokers' allegedly knowing circumvention of the Option Contract. Further, TAI admits that the elements of IIPEA and IICR require the defendant's knowledge of the contract or economic relationship. Because TAI could not show there was a triable issue of material fact as to the brokers' knowledge of the Option Contract, the brokers were entitled to summary adjudication of all of these claims.

2.    *Listing Agreement's Enforceability After Foreclosure*

In the second of the two conflicting operative complaints underlying this appeal, TAI alleged that DTLA breached the listing agreement and the implied covenant of good faith and fair dealing by agreeing to sell the Property on First Mortgage's behalf and ceasing efforts to sell it on TAI's behalf. TAI alleged the agreement remained enforceable notwithstanding the trustee's sale for two reasons: (1) because of its rights under the

12

Option Contract;  and (2) the sale was void, having been held in violation of the automatic stay in the bankruptcy of a junior lienholder.

DTLA argued in its summary judgment motion that it began working on First Mortgage's behalf because foreclosure caused the listing agreement to be "terminated through the change in ownership."  It argued that TAI "cannot now allege that the foreclosure was void, as the basis for its novel breach of contract claims."  As supporting evidence, DTLA cited TAI's allegation in the *Blackwood* complaint, where it admitted its title was extinguished through foreclosure and transferred to First Mortgage.

In opposition, TAI characterized its prior allegation as "merely a recognition that subsequent to the purported trustee's sale, a trustee's deed upon sale was recorded that purported to convey title to [First Mortgage]."  It argued that the listing agreement remained enforceable because "TAI continued to have control over the sale of the property under the option contract . . . ."  The only supporting evidence TAI offered on this point was Aguila's declaration, in which he described the formation and terms of the Option Contract and said he had been conversing with potential purchasers and investors.  Aguila did not suggest the listing agreement was ever modified or amended.

TAI also argued that the trustee's sale was void because it was conducted in violation of the automatic stay in the bankruptcy of a junior deed of trust holder.  As supporting evidence, TAI submitted (1) a deed of trust that purported to secure a $2 million loan the lienholder made to TAI in 2017; and

13

(2) the docket for the bankruptcy. [7] The docket indicated the bankruptcy stay was ultimately lifted by the bankruptcy court at First Mortgage's request.

The trial court, relying on TAI's admission in the *Blackwood* pleading, found it was undisputed that, once the foreclosure took place, TAI lost its title to the Property, First Mortgage became the new owner, and the listing agreement was no longer valid as to TAI because TAI was no longer the Property's owner.

On appeal, TAI argues this ruling was erroneous. It concedes that "termination [of a listing agreement] will usually be the result following a non-judicial foreclosure because the party intending to sell the property has lost all rights to the property . . . ." It does not dispute that after foreclosure, it was not the titleholder of record. TAI argues, however, that the Option Contract gave "it a sufficient continuing interest for the Listing Agreement to remain in effect and not terminate as a matter of law."[8]

---

[7]     TAI also alleged, argued, and offered evidence that *the brokers knew* about the bankruptcy and the alleged illegality of foreclosure. Such knowledge is irrelevant to the continued viability of the listing agreement, however. The sale either was or was not rendered void by a violation of the automatic stay, regardless of what information may have been known to the brokers.

[8]     This is the only argument TAI identifies in a heading that summarizes the point, as required by California Rules of Court, rule 8.204(a)(1)(B). Litigants must "'present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.'" (*Opdyk v. California Horse Racing Bd.*

14

TAI offers neither evidence nor meaningful legal analysis to support its argument.  TAI did not present evidence that its earlier allegation about its title being "extinguished" by the trustee's sale was inadvertent, unauthorized, or mistaken, and the trial court was not required to accept its attempt to downplay its significance.  (*Magnolia Square Homeowners Ass'n. v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1061 ["The pleading constitutes an evidentiary, rather than judicial admission, and 'it is always competent for the party against whom the pleading is offered to *show that the statements were inadvertently made or were not authorized by him or made under mistake of fact*"].)  TAI fails to explain how the terms of the listing agreement, which was expressly premised upon TAI being the "Owner" of the Property, continued to operate after it lost title to the property.  Indeed, TAI did not plead any specific provision of the listing agreement that DTLA breached.  "We are not bound to develop [appellant's] arguments for [it]."  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)  TAI's argument that it could enforce the listing agreement after it lost title to the property is both unpersuasive and insufficiently supported by legal authority.[9]  (*Singh, supra,* 65 Cal.App.5th at p. 861.)

(1995) 34 Cal.App.4th 1826, 1830–1831, fn. 4.)  TAI's remaining arguments are forfeited for this reason (*Petrovich Development Co., LLC v. City of Sacramento* (2020) 48 Cal.App.5th 963, 976, fn. 9), among others.  (See, e.g., *County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861 (*Singh*) [citation to legal authority lacking]) (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 68 [argument not made to the trial court].)

[9]    The same is true of TAI's contention that the listing agreement remained in effect because an alleged bankruptcy stay violation rendered the foreclosure proceedings void.  Even if the argument were

In sum, the trial court did not err in granting summary judgment for the brokers.  We need not and do not reach the brokers' alternative bases for summary judgment.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MORI, J.

We concur:

COLLINS, Acting P. J.

TAMZARIAN, J.

---

not forfeited (see fn. 8, *ante*), TAI's five-sentence discussion and what scant relevant evidence exists in the record fail to persuade us TAI raised a triable issue precluding summary judgment.  Notably, the record includes TAI's concession that the bankruptcy stay was ultimately lifted by the bankruptcy court at First Mortgage's request.